13115

MIMS v. BENNETT *ET AL.*

(158 S. E., 134)

February, 1930.

*Messrs. W. D. Bennett* and *Brantley & Zeigler,* for appellants,

*Messrs. E. H. Blackmon* and *Ed C. Mann,* for respondent,

April 10, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

In his complaint, the respondent alleged his employment as a rural mail carrier and ownership of a certain Ford automobile; that while he was engaged in the post office at Eutawville, making up his daily mail preparatory to its delivery, and when his automobile was parked in front of the post office, "the defendants, Robert Bennett and Darby Sanders as the agents, servants and employees of the defendant, A. B. Bennett," did unlawfully and wantonly seize the automobile and drive the same to Holly Hill, where it was turned over to the defendant A. B. Bennett; that there-

after his demand on the defendant A. B. Bennett for the return of the automobile was refused and that A. B. Bennett continued in the unlawful possession thereof; that the three defendants unlawfully and willfully deprived the respondent of the use and benefit of his automobile, and converted the same to their own use; that respondent was forced to hire conveyances for the delivery of the mail; that he was compelled to buy another automobile; that his credit was impaired, his reputation for honesty hurt; and that he was made the subject of the ridicule of the public; and damages in the sum of $2,950.00 were alleged and demanded.

The defendant A. B. Bennett interposed a general denial.

The defendants Robert Bennett and Darby Sanders, in their answer, admitted the seizure of the automobile of respondent, but denied the other material allegations of the complaint, and further alleged that the taking of the automobile by them was legal under the terms of a past-due and unpaid chattel mortgage executed by the respondent, but they did not set up in their answer to whom the mortgage was given, or who was the owner of it at the time of seizure.

The defendants Robert Bennett and Sanders took the position that the allegations of the complaint with reference to the duties of the respondent as a rural mail carrier were immaterial to the case, and moved that they be struck out. It does not appear that this motion was directly passed upon by the presiding Judge; but defendants' counsel objected to testimony to sustain the allegations referred to, which objections were overruled.

The trial in the County Court of Orangeburg before his Honor, County Judge B. H. Moss, and a jury, resulted in a verdict and judgment in favor of the respondent against the defendant A. B. Bennett alone for $450.00 actual damages and $450.00 punitive damages. The motion of the losing defendant for a new trial on numerous grounds, including the one that the verdict was illogical and could not stand, was refused.

From the judgment entered on the verdict, the defendant A. B. Bennett has appealed to this Court.

There are sixteen exceptions, but the attorneys for the appellant have grouped these as presenting six questions. So, without referring to the exceptions in detail, we shall undertake to dispose of the questions stated, although we shall not follow the order in which they have been set forth by the appellant.

By the first question, referring to the motion for a directed verdict and to the motion for a new trial in favor of the appellant, it is insisted that there was no evidence to show that Robert Bennett and Darby Sanders, who seized the automobile, were acting at the time as the agents of the appellant.

The appellant and his two codefendants testified that Robert Bennett and Sanders were not acting for the appellant at the time of the seizure. Robert Bennett and Sanders, as well as another witness, F. E. Hawthorne, testified that the automobile was seized at the instance of Hawthorne, a son-in-law of the appellant, who, it was alleged, was conducting Holly Hill Motor Company, Inc., under a chattel mortgage executed by the respondent to N. C. and D. A. Bennett, sons of the appellant, who had transferred the mortgage to the motor company.

If there had been no evidence contradicting the claims of the appellant, as shown by the testimony to which we have referred, it would be proper to answer this question in the negative. But we find in the record some evidence, both direct and circumstantial, which required the Court to submit the question of agency to the jury.

The respondent testified that he purchased the automobile from N. C. Bennett, and gave him a chattel mortgage to secure the balance of the purchase price, that he had been making his payments to N. C. Bennett, who held the paper, and that he had not executed any mortgage to N. C. Bennett and D. A. Bennett. He introduced in evidence a typewritten

letter, carrying in typewriting appellant's name, dated May 20, 1929, received in due course of mail, notifying him not to pay any more money on the automobile to N. C. Bennett, but to make payment to the "G. M. A. C. at Columbia, S. C., if they hold your paper, and if they do not hold your paper, make your payments to D. A. Bennett or at my office, Holly Hill." Another typewritten letter, alleged to have been sent for the appellant, dated June 22d, also introduced, notified the respondent that N. C. Bennett "had not a red penny piece in the automobile that you purchased through him," and again warned the respondent not to pay any more money on it to N. C. Bennett. Respondent said in his testimony: "In response to these letters I went to see A. B. Bennett. He told me not to make any more payments to N. C. Bennett." On September 18, 1929, two days after the car had been seized, the respondent, as he testified, made demand on the appellant for the automobile, and was asked by him "if I thought I had any right to the car," and, upon an affirmative reply by the respondent, the appellant said, "Why don't you pay for the car?" and further, "Get it from the man you are paying, you can't get it from me." Respondent testified positively: "I know Darby Sanders and R. A. (Robert) Bennett. They worked for A. B. Bennett at that time."

Witness E. H. Dantzler testified that, at the time Robert Bennett and Darby Sanders seized respondent's automobile, "they were working for A. B. Bennett." And while his testimony on that point was weakened considerably on cross-examination, the fact remained that he did make the positive statement on his direct examination. Heyward Jackson swore that Sanders and Robert Bennett had been working for A. B. Bennett "ever since I have known them." On his cross-examination, the appellant said that Sanders and Robert Bennett "might have done some work for me" on the day the car was seized.

It is contended by the appellant, since there was no verdict against Robert Bennett and Darby Sanders, who were alleged to have acted as the agents of the

appellant, that the verdict against the appellant is illogical and cannot stand (fourth question). To sustain his proposition, the appellant relies upon the legal principle that, "where a master and his servant are sued together for the same act of negligence or willful tort, and the master's liability rests solely on the servant's conduct, a verdict against the master alone is illogical and cannot stand." *Weeks v. Carolina Power & Light Co.*, 156 S. C., 158, 153 S. E., 119, 121. See, also, the other cases cited by appellant, declaring the same principle, as follows: *Johnson v. A. C. L. Railroad Co.*, 142 S. C., 125, 140 S. E., 443; *Durst v. Railroad Co.*, 130 S. C., 165, 125 S. E., 651; *Pendleton v. Railroad Co.*, 133 S. C., 326, 131 S. E., 265; *Sparks v. A. C. L. Railroad Co.*, 104 S. C., 266, 88 S. E., 739.

But this case is not governed by the principle referred to, declared in the cited cases. Here the principal and agents were sued for the conversion of personal property; the conversion was laid to all three of the defendants; there was evidence, already pointed out, to show that the agents were acting under directions of the principal, given prior to the wrongful acts alleged to have been committed; and there was also some evidence tending to show ratification on the part of the principal of the wrongful acts, as well as evidence to show that the principal alone continued to hold the automobile after its seizure by his agents, and that demand for its return had been made upon him. We think the verdict rendered here is not in conflict with the principle announced in the cases depended on by the appellant, and that it comes squarely within the principle announced in *Williams v. Tolbert*, 76 S. C., 211, 56 S. E., 908, and *Jones v. Parker*, 81 S. C., 214, 62 S. E., 261. In the *Jones case*, it was held, "One defendant, against whom a judgment has been obtained, has no ground for complaint, in that the jury rendered a verdict in favor of his codefendants, who may also have been liable, in an assault and battery." Syllabus.

The sixth position of the appellant is that the trial Judge erred in refusing to charge the jury that the mortgage, under which the defendants Robert Bennett and Darby Sanders seized the automobile was a valid mortgage on its face. To properly understand the question made, it is, perhaps, necessary to say, although it occasions some little repetition, that the defendants claimed that the automobile was seized by Robert Bennett and Sanders under a mortgage alleged to have been executed by the respondent to N. C. Bennett and D. A. Bennett, assigned, as it was claimed, by the original mortgagees to Holly Hill Motor Company. The respondent swore positively that he did not execute this mortgage, which was produced in the Court. He claimed that he had given a mortgage to N. C. Bennett, which at the time of the seizure was still owned by, and in the possession of, N. C. Bennett; the debt secured by which mortgage he had been paying until it was reduced to only about $90.00. So far as the terms and wording of the mortgage were concerned, it may have been apparently valid on its face. But when the respondent testified positively that he had not executed the paper—in reality charging the paper to be a forged instrument—we do not see how it was possible for the trial Judge to charge that the mortgage was valid on its face.

Following the motion to strike out the allegations in the complaint as to the respondent being a rural mail carrier, and the objection to testimony in support of those allegations, the appellant, by his fifth question submitted, urges that such testimony was erroneously allowed, for the reason that thereby the jury were given the impression that they could find special damages on that account. The testimony as to the occupation of the respondent was not objectionable in our opinion. It was admissible on the issue of punitive damages, for it tended to show the motive and spirit of the defendants in seizing the respondent's automobile at a time when they knew, or should have known,

that such seizure would greatly interfere with the conduct of the public business in which the respondent was engaged. It could not be used, however, as we shall later show in considering another question, for the purpose of ascertaining the damages suffered by the respondent.

We cannot agree with the appellant in his third proposition that there was no evidence to warrant a finding of punitive damages. There was some testimony, as already pointed out, showing that Robert Bennett and Sanders were the agents of the appellant; that the mortgage, under which the automobile was taken, was a forged instrument; that the seizure was unlawful, and with the motive of forcing the respondent to pay a debt claimed by the appellant against him, when the appellant was not entitled to collect that money.

In the second question raised by the appellant, it is urged that the evidence did not warrant a verdict of $450.00 as actual damages, and for that reason there should have been a new trial of the cause. The argument is that, as this was an action for conversion of personal property, the actual damages were limited to the value of the property at the time of the conversion; that the value of the automobile, as testified to by all the witnesses who gave evidence as to that value, was the sum of $310.00.

Mr. Justice Woods, speaking for this Court, in *Sizer & Co. v. Dopson,* 89 S. C., 535, 72 S. E., 464, 466, said this: "In actions for conversion or for the taking and detention of personal property, the general rule is that the measure of damages is the value of the property with interest thereon, and the jury may give the highest value up to the time of the trial. *Rogers v. Randall,* 2 Speers, 38; *Gregg v. Bank of Columbia,* 72 S. C., 458, 52 S. E., 195, 110 Am. St. Rep., 633. And if the party wrongfully in possession has received any benefit therefrom the jury may take that into account. *Buford v. Fannen,* 1 Bay, 273, 1 Am. Dec., 615. Punitive

damages may now be recovered under the Act of 1907 (25 Stat., 483). * * *"

The holding made in the *Sizer case* was approved in *Young v. Corbitt Motor Truck Co.,* 148 S. C., 511, 146 S. E., 534.

In his brief, the respondent concedes that this suit was one "for the unlawful taking and conversion of said automobile."

In connection with the matter under consideration, the appellant contends that the trial Judge failed to properly instruct the jury as to damages, as he should have done. Perhaps the Court did not go fully enough into the law on this subject, but, taking the whole charge into consideration, with the fact in mind that the appellant did not make any request for a more extended charge thereon, we are not able to find that there was reversible error as to the charge on the measure of damages.

It is our opinion, however, under the law as to the measure of damages in an ordinary action for conversion, as stated by Mr. Justice Woods, that the verdict for actual damages was excessive, and the amount thereof should have been reduced by the Court. Under the evidence given in the case, and under the view of the jury that there had been a conversion, the verdict for actual damages should have been $310.00, the value of the car, and the interest on that sum from the date of the conversion, September 16, 1929, to the date of the trial, February 10, 1930. As we have calculated it, the interest, at the legal rate of 7 per cent., amounted to $8.68. The respondent is therefore entitled to $318.68 as actual damages. This holding, however, does not mean, necessarily, a new trial of the case. This Court has the right to affirm the judgment below conditionally. See *Johnston v. Bagger,* 151 S. C., 537, 149 S. E., 241. The verdict here for actual damages was excessive to the amount of $131.32, and should be reduced accordingly.

The judgment of this Court is that the judgment of the lower Court be, and the same is hereby, affirmed, upon the condition that, within ten days from the filing of the remittitur in the cause with the County Court of Orangeburg County, the respondent shall remit from the verdict in his favor as to actual damages the sum of $131.32, and, upon failure of the respondent to so remit the said amount, the judgment is reversed, and a new trial shall be, and is, ordered.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.