Anna Blasinay, Respondent, v. Albert Wenzlick Real Estate Company, a Corporation, Albert Wenzlick, Jay Yohe, Defendants; Albert Wenzlick Real Estate Company, a Corporation, Appellant.—138 S. W. (2d) 721.

St. Louis Court of Appeals. Opinion filed April 2, 1940.

Motion for rehearing April 16, 1940.

Writ of Certiorari denied June 11, 1940.

*Cobbs, Logan, Roos & Armstrong* for appellant.

*Milton C. Lauenstein* for respondent.

528

HUGHES, P. J.—This case was heretofore determined by this court by an opinion handed down on January 9, 1940. Thereafter, on motion of respondent a rehearing was granted, and the cause was further briefed and reargued. After careful consideration and research we find no reason to change our original opinion, and it is now submitted with additions thereto as follows:

This is an action in tort by which plaintiff seeks to recover damages alleged to have been sustained by her by the fraud and misrepresentation of the Albert Wenzlick Real Estate Company, through its agents, Albert Wenzlick and Jay Yohe. All three, the Albert Wenzlick Real Estate Company, Albert Wenzlick and Jay Yohe, were made defendants in this action.

In October, 1930, plaintiff purchased from the Albert Wenzlick Real Estate Company a $5000 promissory note, secured by a deed of trust on property at 2023 Franklin Avenue in St. Louis. The $5000 note was dated May 29, 1930, with interest at the rate of six per cent per annum and was due three years after date. The evidence is clear that at the time she purchased the deed of trust, Mrs. Blasinay dealt with Albert Wenzlick, who was then president of the Albert Wenzlick Real Estate Company, and Jay Yohe, who was then an office employee of the defendant company and in charge of its loan department. No other agent or employee of the Wenzlick Company had anything to do with the transaction.

At the time Mrs. Blasinay purchased this $5000 deed of trust, she paid for it by relinquishing another deed of trust in the principal sum of $4500 and the difference of $570, covering interest, and

adjustments was paid in cash. Together with the $5000 principal note, plaintiff received six semi-annual interest notes of $150 each.

The plaintiff testified that at the time she acquired this deed of trust from the Wenzlick Company, she went to their office and first spoke to Mr. Albert Wenzlick, who was then president of the company. Albert Wenzlick turned her over to Mr. Yohe, the head of the loan department of the Wenzlick Company, who handled the details of closing the transaction.

It was while plaintiff was completing the details of the transaction with Mr. Yohe that one of the alleged representations upon which she bases her action is supposed to have been made, plaintiff testifying that Yohe told her that the property at 2023 Franklin was worth $10,000. Plaintiff's evidence further indicates that upon inquiry Albert Wenzlick had stated that the loan was good and that the property securing the note was worth $10,000 or more.

The first five of the six semi-annual interest notes for $150 each were paid as they fell due and checks therefor were forwarded to Mrs. Blasinay by the Wenzlick Company. Some two months before the principal note and the last interest note became due, defendant Company wrote plaintiff, advising her that the loan would mature on May 29, 1933, and asking her to sign and return a copy of the letter if she was willing to renew the loan. This letter was so signed and returned by Mrs. Blasinay.

However, the efforts to have the loan renewed were unavailing, due to the inability of the owner of the property. When it was found that the loan could not be renewed, Mrs. Blasinay was so advised, and it was recommended that the property be foreclosed and bought in by Mrs. Blasinay so that she might have the income from the property.

When Mrs. Blasinay insisted that she would not take over the property because of her lack of knowledge of real estate, the Wenzlick Company offered to furnish a straw party to take title for her benefit, the property to be managed by the Wenzlick Company, who would remit the net rent to plaintiff after deducting taxes, repairs, etc. In order that Mrs. Blasinay might be properly protected, the straw party was to execute new notes and a new deed of trust for delivery to the plaintiff.

This plan of handling the situation was discussed with Mrs. Blasinay at a meeting held at the Wenzlick office. When Mrs. Blasinay came to the office on this occasion, she was accompanied by her husband, Frank Blasinay; her sister, Mrs. Kutilek, and Mr. Armbruster, a friend and employer of Frank Blasinay. After an explanation and discussion of this arrangement in the presence of all of these parties, an agreement was signed by Mrs. Blasinay and her husband consenting to the plan as outlined.

Thereafter, a foreclosure sale was held in accordance with the terms of the deed of trust and the Franklin Avenue property was bought in in the name of Charles Hart for the account of Anna Blasinay. Hart then executed a new principal note for $5000 due in three years, together with a deed of trust as security. Hart also executed a quit-claim deed to the property and these new papers were turned over to Mrs. Blasinay.

The income from the property was not sufficient to meet the payments on the new loan as they matured, and in March of 1937 a second foreclosure sale was held and the property bought in by Mrs. Blasinay.

Over the objection of the defendant, plaintiff was allowed to testify that following the foreclosure sale, she sold the property on Franklin Avenue for a gross price of $1690, of which she received a net of $600.

The case was submitted to the jury against all three defendants, the Corporation and the two individuals as agents, and a verdict returned in favor of plaintiff and against defendant Albert Wenzlick Real Estate Company, appellant here, for $3000 actual and $500 punitive damages. The verdict was in favor of the defendants Albert Wenzlick and Jay Yohe.

The defendant Albert Wenzlick Real Estate Company appellant here, duly filed its motion for new trial which the court overruled.

Defendant Albert Wenzlick Real Estate Company thereafter filed its affidavit for appeal and an appeal was duly granted to this court.

Appellant's contention is that it being a corporation and this action being brought against it and its agents, the doctrine of *respondeat superior* necessarily applies, and the verdict being in favor of the agents exonerates the corporation. Respondent's only answer to this rule of law is that the liability of appellant was, "primary and not derivative, and hence a judgment against the agents who participated in the fraud was not a prerequisite to a judgment against the corporation."

There can be no question under the law but that joint tort-feasors are liable both jointly and severally. While at common law a plaintiff was required to sue all joint tort-feasors in his one cause of action, that rule has long been abrogated by our procedure, and by statute (Sec. 703, R. S. 1929), it is provided that every person who shall have a cause of action against several persons may bring suit thereon jointly against all or as many of the persons liable as he may think proper. And their liability is joint and several without regard to which of the wrongdoers reaped the fruits of the fraudulent transaction. And so it has been held, as in the case of Leimkuehler v. Wessendorf, 18 S. W. (2d) 452, 323 Mo. 64, which respondent cites, that where all of the defendants participated in the fraud,

that each and all of them are liable as joint fraud-feasors. But that is not the question presented by the pleadings and evidence and the verdict in this case. The question here, in simple form, is this: A corporation and its agents are jointly sued for a fraud alleged to have been actually perpetrated by the agents; upon a trial the jury found that the agents were not guilty of the fraud alleged. Under such state of facts, can the corporation be guilty?

The doctrine of *respondeat superior*, which comes from the common law, and under our law is a phrase used to indicate the responsibility of a principal for the acts of its servant or agent, is often met with in negligence cases, wherein it has been uniformly held that where the servant is charged with misfeasance, and he and the master are joined as defendants, and the petition imputes the negligence of the servant to the master, a verdict of the jury finding the servant not guilty of negligence, discharges the master also, although the verdict is against the master. [McGinnis v. Chicago, R. I. & P. Railway Co. et al., 200 Mo. 347; Michely v. Mississippi Valley Structural Steel Co. et al., 299 S. W. 830; Stevens v. D. M. Oberman Mfg. Co. et al., 79 S. W. (2d) 516; Stoutimore v. A. T. & S. F. Ry. Co., 92 S. W. (2d) 658; Beck v. Moll, 102 S. W. (2d) 671; Oliver v. Morgan, 73 S. W. (2d) 993; Brunk v. Hamilton Brown Shoe Co., 66 S. W. (2d) 903; Ruehling v. Pickwick-Greyhound Lines, 85 S. W. (2d) 602.]

The same rule has been applied where a hotel company and its manager were sued jointly for false imprisonment, the verdict exonerating the manager, exonerated the hotel company, and judgment could not be rendered against it. [Wade v. Campbell, 243 S. W. 248, 211 Mo. App. 274, 279.]

The reason of the rule applies with equal force in any other tort case as in a negligence case. In the case of Stith v. Newberry Co. (Mo.), 79 S. W. (2d) 447, 457, although that was a negligence case, the court used significant language, as follows:

"Where the actionable negligence or tort is that of the servant only, and the employer is liable solely because of his being such, and therefore liable for the negligence or torts of his servant committed in the line of his duties as servant, and the injured party sues both, and in a trial on the merits the verdict is for the servant and against the master; such verdict against the master is a nullity and will not support a judgment thereon. Such is the law in this State and generally. [39 C. J. 1367; 18 R. C. L. 776; 15 R. C. L. 1026; Southern R. Co. v. Harbin, 135 Ga. 122, 68 S. E. 1103, 30 L. R. A. (N. S.) 404, 21 Ann. Cas. 1011, and note; Hobbs v. Illinois Cent. R. Co., 171 Iowa, 624, 152 N. W. 40, L. R. A. 1917E, 1023 and note.]"

The plaintiff had a right to sue one or all of the joint tort-feasors. She could have sued the Real Estate Company alone and relied upon proof that two of its agents, acting within the scope of their employ-

ment perpetuated the fraud; but instead of doing that she sued both the Real Estate Company and the agents, and sought a joint verdict against them. But the Real Estate Company being a corporation could only speak and act through its agents and employees; it could not be guilty of fraud unless one or both of its agents were guilty, and the jury found that neither of them were guilty, therefore, as said by the court in Beck v. Moll et al., 102 S. W. (2d) 671, "It follows as night follows day that unless the agent is liable the principle cannot be held liable." The respondent accepted the verdict of the jury without question, and is bound thereby.

To the foregoing which constituted the original opinion, after rehearing and consideration of additional briefs, we add the following:

It matters not whether the cause of action is for negligence, assault, false imprisonment or fraud and deceit, the agent or servant is liable because of his own misfeasance or wrongful act; the master or principal is liable because he acts by his servant or agents; and is therefore bound to see that no one suffers legal injury through the servant's wrongful act done in the master's or principal's service within the scope of the agency. Both are liable jointly, because of the relation of principal and agent, they are united or identified in the same tortious act resulting in the same injury. Each are liable severally because section 703, Revised Statutes 1929 makes them so. But if the fraud charged is one of misfeasance, alleged to have been done by the agent alone, and the agent is exonerated, it matters not whether the principal be a corporation or an individual, it too is absolved from liability, for the simple reason that in such case the act charged was not done. The rule applies with equal logic to fraud and deceit by misrepresentation as to any other tort, for if the court or jury find that the agent did not make the alleged misrepresentation, how could the principal be held liable for something that did not occur?

Let us look to what some of the law writers and judges have said: "Where the acts of the agents of the corporation are not such as to impose liability upon them individually there is no liability upon the parts of the corporation, except in cases where the agent simply negligently fails to do what should have been done." [14a Corpus Juris 768.]

"But inasmuch as a corporation can be held liable for a malicious act only by imputing to it the wrong of its agents or servant, it necessarily follows that if the agent did not act maliciously, there is no malice which may be imputed to the corporation." [14a Corpus Juris 771.]

"It is also the rule that the corporation may prove in justification and to relieve itself of liability that the officer, agent or employee causing the arrest or imprisonment could not have been held liable or was released." [13 Am. Jur. 1050.]

"When a master is sued for a false arrest or imprisonment caused by his servant he may prove in justification that the servant could not have been held liable, or has been released and, if the servant is not responsible in damages the master is also exonerated." [35 A. L. R. 652.]

In the early cases of Perkins v. Mo. Kans. & T. R. R. Co., 55 Mo. 209, the Supreme Court said, "the only way in which a corporation can act in the commission of wrong or otherwise is by their agents."

True the questions here presented arise more frequently in negligence cases than in other tort cases, but the principle remains the same, which simply is that if the party charged with the tort is exonerated, that is, found not guilty, then of course his principal who can only be liable through the relationship of principal and agent is likewise not guilty. But the question here is really on a broader basis than that, it is that such a verdict, as in this case, is so contradictory and inconsistent that no man can tell what was in the mind of the jury, and hence it will not support the judgment.

In the briefing argument and consideration of this case, this important and controlling factor has been relegated to a secondary position by placing too great stress on the doctrine of *respondeat superior*. While that doctrine is necessarily in the case and entitled to careful consideration, the more important question in this case is the inconsistent and contradictory verdict on which the judgment is based.

Respondent argues with great emphasis that an officer of a corporation is the corporation itself and stands in a different situation from an agent. No citation or authority is given us to support that contention. We find authority to the contrary: "The officers of a private corporation have no franchise in their offices; they are merely representatives or agents of the corporation." [19 C. J. S. Corporations, par. 741.] "The president and other officers whom they (the directors) appoint are agents of the corporation." [Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, 331.] To the same effect is the case of Federal Land Bank of St. Louis v. Bross, 122 S. W. (2d) 35, 39. But let us think a moment on that claim and see where we would find ourselves: Let us assume that the officer is the corporation itself, then we find in this case a verdict convicting the corporation in one sentence and exonerating it in the next; and so if we endeavor to make the officer the corporation itself, as find the stronger reason that such verdict is inconsistent and contradictory. The corporation itself cannot be both guilty and innocent.

But let us continue with what other courts have said:

In the case of Indiana Nitroglycerin and Torpedo Co. v. Lippincotte Glass Co. (Ind.), 75 N. E. 649, one Clarke and his employer, the Nitroglycerin Company, were sued as joint tortfeasors for the negligence of Clarke in the "shooting" of a gas well; the court instructed the jury "there was two defendants in this case, and you may find for

the plaintiff against both defendants, or against one and for the other, or you may find for both defendants, as the preponderance of the evidence warrants.'' The Supreme Court said:

''It is clear that the trial court fell into error in the giving of the above instruction. There could be no responsibility on the part of appellant, under the facts pleaded in said paragraph, viewing it as an action for negligence, unless Clarke, its servant, was also negligent; and a verdict against the former and in favor of the latter would, under the allegations of the paragraph, have been self contradictory. If appellant were compelled to pay damages it had a right to seek indemnity from its servant, and as the latter had been discharged in a suit on the merits, he could not again be held liable, for that would deprive him of the benefit of his adjudication.''

The case of White v. International Text Book Co.. (Iowa), 129 N. W. 338, was an action for malicious prosecution against one Crane and the Text Book Company, Crane being its superintendent and in full charge of its branch store, and who had caused plaintiff's arrest. The Supreme Court of Iowa held:

''The verdict was in favor of Crane and against the Company and the latter insists that, as it acted solely through Crane as its superintendent, if he was without malice or had probable cause, the Company necessarily was in the same situation. The information was signed by Griswold. The only authority for doing so from the Company was through Crane, who directed him to sign it, for he was without authority in the matter of collections, and therefore possessed of no implied authority to prosecute in behalf of his principle. [See Markley v. Snow, 207 Pa. 447, 56 Atl. 999, 64 L. R. A. 685; 10 Cyc. 1216.] The Company participated in no manner, save through Crane, for all it did was to telegraph by the manager of its bond department in response to Crane's inquiry, 'shall I arrest him?' to lay the matter before its attorney Holt and be guided by his advice. In pursuance of this instruction he consulted Holt, and, having received his opinion based on the information received, caused plaintiff's arrest. The International Text Book Company is a Corporation and as such could act only through agents, and as Crane was its sole agent in this matter, it is not perceived on what theory it could have been found that the Company was actuated by malice and was without probable cause and yet that the agent either had probable cause or was without malice. The jury must have concluded that neither had probable cause. Their findings as to Crane necessarily rested on the facts bearing on the guilt or innocence of plaintiff which he knew and, in the exercise of ordinary diligence should have known, and the Company was chargeable with the knowledge of no others. The record as to each was precisely the same and it was not possible fairly to reach different conclusions as to whether there was probable cause. Nor could the Company have been found to have been actuated by

malice unless Crane also was actuated by the same bad motive. It is only by imputing the malice of the agent to the principle that a corporation may be held amendable to a suit for malicious prosecution. [1 Cook on Corporation, par. 15b.] If, then, Crane was not malicious in what he did there was no malice to impute to the Company. On the other hand, if the Company is chargeable with malice, Crane must have entertained an evil motive in doing what he did. Manifestly, the verdict in favor of one defendant and against the other was fundamentally contradictory and was necessarily erroneous as to one or the other. No one can tell which. If the verdict in favor of Crane was conclusive as to the Company, as is contended, then that against the Company was conclusive as against Crane. The verdict, in view of the facts, is so anomalous and uncertain that a new trial should have been ordered.''

Even more analogous to the present case is the case of Dunshee v. Standard Oil Co. (Iowa), 146 N. W. 830, which was to recover damages based upon the charge of conspiracy and unfair trade. The Supreme Court of Iowa held:

''As we have earlier noted, the verdict of the jury, as construed by the trial court in its entry of judgment, exonerated the agents of appellant from liability, in effect finding that they, nor none of them, had been guilty of malicious or wrongful acts warranting a recovery against them. It is contended by the appellant that under such a record it was error on the part of the trial court to enter judgment against the appellant, for the reason that its liability could only arise from the wrongful acts of its agent as charged, there being no evidence to connect it with the acts charged other than through its agents who were named; and that being liable only for imputed wrong, if the finding of the jury relieved the only persons through or from whose acts the imputation of wrong on its part could arise such would necessarily relieve it. This court has held that a Corporation can only be liable for a malicious act by imputing to it the wrong of its agent, and, if the agent be found not to have acted maliciously, there is no malice to impute to the corporation principal. [White v. Text Book Co., 150 Iowa, 31, 129 N. W. 338.] The rule also has the support of many authorities of other States. [McGinnis v. C. R. I. P. Ry., 200 Mo. 347, 98 S. W. 590, 9 L. R. A. (N. S.) 880, 118 Am. St. Rep. 661, 9 Ann. Cas. 656; Indiana Co. v. Blass Co., 165 Ind. 361, 75 N. E. 649.]''

Respondent's able counsel concedes that he finds no authority in the broad stretch of the domain of America to support the plaintiff's contention here except the cases of Wolfson v. Ocean P. R. Corp. et al., 114 Cal. App. 127, 299 Pac. 579; Waltemath v. Western S. R. Co., 50 Pac. (2d) 451, 9 Cal. App. (2d) 583; Benson v. So. Pac. Ry. Co., 177 Cal. 777, 171 Pac. 949; and Mims v. Bennett (S. C.), 78 A. L. R. 360.

In the Wolfson case while the doctrine of *respondeat superior* was lightly passed on without consideration, the question of the inconsistency of the verdict was not even mentioned; but aside from this, the holding was based on the case of Benson v. Southern Pac. Co., 177 Cal. 777, 780, 171 Pac. 948, 949, which does correctly consider and state the law, and it holds that there was proof that in that case the servant acted at the direction of his employer; which of course would make the employer liable independent of the liability of the employee. And the case further holds to the effect that the defendant must call the court's attention to the defective verdict when it was returned, because of a statute to that effect in that State. The Waltemath case was based on an act of omission or nonfeasance on the part of the agent, and the holding was that under the law the liability of the principal was independent as well as related, which is the law. To the same effect is the case Mims v. Bennett (S. C.), 78 A. L. R. 360, cited by respondent.

In this case, while the doctrine of *respondeat superior* is invoked, the more important question is one closely related to and yet independent of that doctrine, i. e., the inconsistency of the verdict. If, as respondent now claims, that the Albert Wenzlick Real Estate Company and Albert Wenzlick, when respondent claims owns the company, but of which there is no evidence in the record, are one and the same, then the inconsistency of a verdict finding in favor of one and against the other, is so glaringly contradictory as to be absolutely meaningless. The verdict would amount to a finding, "A is guilty, A is not guilty."

For the reasons herein assigned the judgment herein cannot be upheld. However, a careful perusal of the record is convincing that the case as tried below and the evidence adduced was on the sole theory of defendant Real Estate Company's liability by reason of relationship, that is, the misrepresentation of its officers and agents. We cannot definitely determine from the record before us, but we can conceive of plaintiff being able to strengthen her case by additional evidence, and on correct principles of law, and to prove a case against this defendant *per se,* and not by relation to the other defendants in whose favor the verdict was rendered. Such inference may be drawn from the record before us. In such situation we have the discretion to remand the case. [Ducoulombier v. Thompson, 124 S. W. (2d) 1105; Markley v. Kansas City Southern R. Co., 338 Mo. 436, 90 S. W. (2d) 409; Myers v. Union Electric L. & P. Co., 334 Mo. 622, 66 S. W. (2d) 565.] Therefore, in order to avoid the possibility of wrong being done by a complete reversal, the case should be reversed and remanded for a new trial as to the appealing defendant. It is so ordered. *Becker* and *McCullen, JJ.,* concur.