# Richmond

## VIRGINIA STATE FAIR ASSOCIATION, INCORPORATED v. HARVEY L. BURTON, ADMINISTRATOR OF THE ESTATE OF LANDON BURTON, DECEASED, ET AL.

January 24, 1944.

Record No. 2723.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Bowles, Anderson & Boyd*, for the plaintiff in error.

*Charles E. Maurice, Harold C. Maurice, Douglas S. Mitchell* and *W. E. Spain*, for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

On September 27, 1941, Landon Burton, who was then approximately eighteen years of age, was a spectator at the fair which was being conducted by the Virginia State Fair Association, Incorporated, at Richmond. Among the attractions scheduled for that day were certain automobile races. While one of the cars, driven by John Thompson Cumming, was on a trial run, it left the race track, crashed through the fence, and ran into the crowd of spectators, killing young Burton and injuring others.

Burton's administrator brought an action for wrongful death against the Fair Association and Cumming, claiming

that Burton's death was proximately due to the negligence of both defendants. It was alleged that Cumming, at the time of the accident, was negligently operating the automobile, and that he was the servant, agent, or employee of the Fair Association. The administrator also alleged that, independently of the acts of Cumming, its servant, the Fair Association was guilty of negligence in that it failed to exercise ordinary care to keep its premises reasonably safe for the plaintiff's decedent who was there as an invitee.

The trial resulted in a verdict in favor of the administrator against the Fair Association, but in favor of the defendant, Cumming. To review the judgment entered on this verdict, the Fair Association has sought and obtained this writ of error.

The first contention is, that since the plaintiff's case is based upon the theory that Cumming, the driver of the automobile, was the agent, servant and employee of the Fair Association, the verdict and judgment which exonerated Cumming, the servant, from liability, necessarily exonerates his master or principal, the Fair Association. This, of course, is true in so far as the liability of the Fair Association is predicated upon the negligence of Cumming. *Barnes* v. *Ashworth*, 154 Va. 218, 226-230, 153 S. E. 711; *Dalby* v. *Shannon*, 139 Va. 488, 499, 124 S. E. 186. But the exoneration of Cumming, the driver of the car, does not exonerate the Fair Association from liability flowing from the negligence, if any, of any of its other servants, agents, or employees.

The Fair Association next insists that the verdict is contrary to the law and evidence because, it says, (1) the evidence fails to show that the Fair Association was guilty of any negligence which was the proximate cause of the death of the decedent, and (2) even if such negligence be conceded, the evidence further shows that the decedent was guilty of contributory negligence as a matter of law, which bars the administrator's right of recovery here.

The main facts are not disputed. Burton, accompanied by his younger brother, paid the required admission charges

and was admitted to the premises of the Fair Association. The attendance there was large, and before Burton and his brother arrived, the seats in the grandstand, the safest and most favorable place for viewing the races, had been exhausted. Burton and his companion joined the large crowd lining the outer edge of the race track.

The surface of the track was covered with dirt and was banked at its curved ends by raising the outer edge some five or six feet above the level of the surrounding ground. The track was surrounded at the top of this bank with a woven wire fence attached to metal posts driven in the ground. The distance from the fence at the top of the bank to the level ground below was variously estimated at from fifteen to twenty-five feet.

There were no permanent barriers to prevent the spectators from approaching the fence surrounding the track, nor were there any safety zones laid out or designated on the ground to indicate to the spectators that there was danger in their being close to the track. However, a cordon of police officers was thrown around the track outside the fence. These officers were stationed about thirty feet apart and endeavored, from time to time, to keep the crowd away from the fence and down the embankments at the curved ends of the track. The officers repeatedly warned the crowd that it would be dangerous for them to be near the fence, and particularly on top of the embankment. Frequently these warnings were not heeded, the crowd would surge to the top of the embankment, and had to be driven back by the officers.

The Fair Association had entered into a written contract with one Ralph A. Hankinson, a nationally known automobile race producer, under the terms of which the Fair Association was to furnish the grounds and race track, prepare the track for racing, designate the necessary safety zones, and furnish necessary and adequate police and guards. Hankinson was to secure the entries of a certain number of racing cars, a like number of professional drivers, supply all necessary officials, produce the races, and furnish all prizes.

Among the drivers engaged by Hankinson was Cumming, who furnished his own car. Shortly before the races were to commence, Cumming drove his car on the track for the purpose of making several trial runs. He had completed two trial laps, and as he was starting the third, the car left the track at a curve, crashed through the fence, rolled down the embankment outside the track, into the crowd of spectators, striking and killing young Burton. It developed that the driver had lost control of the car because the right rear tire had been deflated by a puncture from a large nail or spike. While some of the spectators had observed during the previous trial runs that this tire was deflated, the driver was unaware of this.

There was testimony that on the morning of the accident the employees of the Fair Association had raked, watered, and prepared the surface of the track. But there was testimony for the administrator that shortly before the accident two police officers, while casually walking across the track, had noticed a number of loose spikes or large nails scattered along the surface. They made no report of this to the race officials or to the Fair Association. There was also evidence that during the preceding days of the fair the surface of a portion of the track had been occupied by bleachers and a platform, used by other concessionaires, which were, of course, demolished or removed in order to clear the way for the races.

Since young Burton was an invitee on the premises of the Fair Association, the latter owed him the duty to exercise ordinary care to see that its premises were reasonably safe for his visit. *Knight* v. *Moore*, 179 Va. 139, 145, 18 S. E. (2d) 266, 269, and authorities there cited. This obligation continued despite the fact that the Fair Association had employed an independent contractor to produce the races. *Richmond, etc., Ry. Co.* v. *Moore*, 94 Va. 493, 506, 27 S. E. 70, 37 L. R. A. 258.

We think there was ample evidence to warrant the jury in finding that the Fair Association failed to discharge its obligation to the decedent.

In the first place, the jury were justified in finding that the Fair Association was negligent in not providing safety zones and in not providing barriers to keep the spectators who could not be seated in the grandstand from coming in dangerous proximity to the track along which the speeding cars were to run. The evidence plainly shows that the police who had been assigned to duty on the defendant's premises were unable to cope with the situation.

Again, we think the jury were justified in finding that the Fair Association was negligent in not properly inspecting the track and in not discovering the loose nails or spikes which were found there shortly before the accident. Whether these spikes came from the demolition of the structures which had occupied a portion of the track, is not shown in the evidence. But if they were so conspicuous as to have been observed by a casual spectator, they could have been discovered by a reasonable inspection of the track. The jury had the right to find that one of these spikes became embedded in the tire of the racing car and caused the accident. It is a matter of common knowledge that even at an ordinary speed a deflated tire is likely to cause the driver of a car to lose control of it. To have allowed loose spikes or nails to remain on the track where racing cars were to be driven at high rates of speed was to invite a catastrophe such as that which actually occurred here.

But the Fair Association insists that the plaintiff's decedent was guilty of contributory negligence, because, it says, that at the time he was struck he was on the bank, just beyond the rim of the track, and had failed to heed the warning and efforts of the police to keep him in a proper and safe place.

While it is true that Hooker, a policeman who was stationed near by, testified that young Burton was "standing about half way that hill" when the car crashed through the fence, other bystanders testified that he was at the bottom of the hill and within the safety line indicated by the police. This conflict of evidence has, of course, been

settled by the verdict of the jury in favor of the administrator.

Complaint is made of the inflammatory nature of argument of counsel for the administrator before the jury. It is not necessary that we review the incident in detail. Suffice it to say that the argument was improper and, upon objection, the jury were so told, and were instructed to disregard the argument on the "particular point" objected to. This was the extent of the motion of counsel for the Fair Association. There was no request for a mistrial.

Error is assigned to the ruling of the trial court on certain instructions granted and refused. One of the contentions is that the lower court erred in refusing to instruct the jury that Cumming, the driver of the automobile, was not the agent or employee of the Fair Association, and that the latter was not liable for his negligence, if any. There would be some merit in this contention had there been a verdict against the Fair Association predicated upon Cumming's negligence. But the verdict was in favor of Cumming, and as we have seen, this necessarily exonerated the Fair Association of any liability arising out of his alleged negligence. *Barnes* v. *Ashworth, supra; Dalby* v. *Shannon, supra.* Therefore, in the case before us, it is immaterial whether the relation of master and servant existed between the Fair Association and Cumming. As presented to us, the gist of the administrator's case is that the evidence was sufficient to warrant the jury in finding that the Fair Association, independent of any act of Cumming, was guilty of negligence which proximately caused the accident. This, we have found, is so.

The other rulings on the instructions involve legal questions which we have already discussed.

On the whole we find no error in the judgment complained of, and it is

*Affirmed.*