ROUGHTON PONTIAC CORPORATION

v.

ROGER N. ALSTON

Record No. 860346

September 23, 1988

Present: All the Justices

*Peter W. Smith, II (Ann F. Gillooly; Stackhouse, Rowe & Smith* on brief), for appellant.
*E. Carter Nettles, Jr.* for appellee.

RUSSELL, J., delivered the opinion of the Court.

This is an appeal from a judgment for the tortious conversion of personal property. The dispositive question is whether a verdict exonerating a servant of tort liability also exonerates his master.

The facts are undisputed. On March 1, 1982, Roger N. Alston (Alston) went to the business premises of Roughton Pontiac Corporation (Roughton) in Norfolk to purchase a new car. He selected a new 1981 Pontiac Phoenix which sold for $9,726.59 and tendered his own 1978 Oldsmobile as part payment. He dealt with John Tarboro (Tarboro), a Roughton employee. Alston expressed a desire to have the entire balance of the purchase price financed and filled out an application for credit with General Motors Acceptance Corporation (GMAC). Tarboro agreed to allow Alston a

$1,426.59 trade-in allowance for the 1978 Oldsmobile, a sum sufficient to cover the entire down payment needed for the new car if Alston's desired financing could be obtained.

Alston and Roughton entered into a written contract called a "purchase order," which provided: "if this transaction is to be a retail installment sale, the contract is not effective unless financing is obtained on terms satisfactory to the parties." Alston gave a check to Roughton for $214.25, which covered state tax, license transfer fees, title fees, and clerical fees. None of his money was applied to the purchase price.

Roughton transferred the license plates from Alston's old car to the new Pontiac and issued a temporary registration certificate on a Division of Motor Vehicles form executed by Roughton. Roughton gave Alston a set of keys and permitted him to drive the new car home. Alston left the old car on Roughton's lot.

Roughton submitted Alston's credit application to GMAC, which refused to accept it. GMAC indicated that it would finance the purchase only if Alston made an additional down payment of approximately $2,500. Roughton informed Alston of these developments three days after he had taken possession of the new car, but Alston refused to return it or to apply for financing elsewhere. He never paid any part of the purchase price and did not transfer the title of his trade-in car to Roughton.

On March 5, 1982, Tarboro took a spare key to the new Pontiac from the "warranty package," went to Alston's place of business during business hours, repossessed the Pontiac, and returned it to Roughton. There is no evidence in the record before us that Tarboro's employer directed him to take this action. Alston returned to Roughton's place of business, recovered possession of his 1978 Oldsmobile, and, several days later, accepted a refund of the $214.25 he had paid for transfer fees.

Alston brought this action against Roughton and Tarboro, jointly and severally, for conversion of the new Pontiac. At a jury trial, the court ruled that title had passed to Alston as a matter of law, refused to permit Roughton to offer evidence explaining the repossession, and struck the evidence of both defendants. The court submitted the case to the jury solely on the issue of damages. Alston's only proof of damages was that he had intended to drive the new car to Baltimore to give a surprise party for an uncle and that the repossession had made it necessary to call upon

someone else for transportation, which had cost him "in excess of $200."

The jury returned a verdict against Roughton for $205 compensatory damages and $25,000 punitive damages. Because the verdict was silent as to Tarboro, the court instructed the jury to return to its room and deliberate upon a verdict for or against him. The jury returned and resubmitted its original verdict against Roughton to which the jury had added the words: "And the defendant, John Tarboro, not guilty." The court treated the latter statement as a verdict exonerating Tarboro and entered judgment in Alston's favor in the amount of the verdict against Roughton, and in Tarboro's favor against Alston for costs.* We awarded Roughton an appeal. Alston assigned no cross-error to the judgment in Tarboro's favor, and that judgment is now final.

On appeal, Roughton contends that it was exonerated by the verdict exonerating Tarboro; that the court erred in ruling that title to the Pontiac had passed to Alston as a matter of law; that the court erred in precluding it from explaining the reasons for the repossession, especially when punitive damages were sought; and that there was no proof of compensatory damages and, therefore, no predicate for punitive damages. Because Roughton's first contention is dispositive of the case, we do not reach its remaining assignments of error.

■ Although Alston brought this action against Roughton and Tarboro jointly and severally, and alleged that both had acted with "ill-will, malevolence, grudge, spite," his proof fell far short of those allegations. In the absence of any evidence that Tarboro repossessed the Pontiac upon the orders of his employer, the proof permits the assessment of liability against Roughton only vicariously, upon *respondeat superior* principles. Thus, if we assume, without deciding, that Tarboro's act was tortious, then Roughton would be vicariously liable only because Tarboro's act was within the scope of his employment, *i.e.*, was fairly and naturally incident to his employer's business, was done while he was engaged upon his employer's business, and was done with a view to further his employer's interests. *United Brotherhood* v. *Humphreys*, 203 Va. 781, 786-87, 127 S.E.2d 98, 101-02 (1962), *cert. denied*, 371 U.S. 954 (1963).

---

* By this action, the court evidently reconsidered and reversed its earlier rulings striking Tarboro's evidence. Because Alston assigned no cross-error to the entry of judgment in Tarboro's favor, we do not reach that question. Rule 5:18.

It is well settled in Virginia that where master and servant are sued together in tort, and the master's liability, if any, is solely dependent on the servant's conduct, a verdict for the servant necessarily exonerates the master. *Rakes* v. *Fulcher*, 210 Va. 542, 549, 172 S.E.2d 751, 757 (1970); *Whitfield* v. *Whittaker Mem. Hospital*, 210 Va. 176, 183, 169 S.E.2d 563, 568 (1969); *Monumental Motor Tours* v. *Eaton*, 184 Va. 311, 314-15, 35 S.E.2d 105, 106 (1945); *Va. State Fair Ass'n.* v. *Burton*, 182 Va. 365, 368, 28 S.E.2d 716, 717-18 (1944); *Barnes* v. *Ashworth*, 154 Va. 218, 228-30, 153 S.E. 711, 713-14 (1930). Justice Epes, writing for the Court in *Barnes*, observed that the better view is, in such circumstances, that the verdict is so arbitrary, capricious, or founded upon a misapprehension of the law, that it should be set aside in its entirety — the finding for the servant as well as the finding against the master. *Id.* at 229, 153 S.E. at 713. The usual consequence would be a remand for a new trial on all issues. Here, however, the judgment in Tarboro's favor is final and was not appealed. Therefore, we lack jurisdiction to disturb it.

All our previous cases applying the foregoing principle have been *respondeat superior* claims in which the master's liability has been solely dependent upon a servant's alleged negligence. Nevertheless, the principle applies to intentional tort cases as well as to negligence cases. *See, e.g., Blasinay* v. *Albert Wenzlick Real Estate Co.*, 235 Mo. App. 526, 531, 138 S.W.2d 721, 724-25 (1940); *Sparks* v. *Atlantic Coast Line R. Co.*, 104 S.C. 266, 268, 88 S.E. 739, 740 (1916).

Well-recognized exceptions to the rule exist where the master's liability is not derived solely from the servant's acts. His liability may be predicated upon evidence showing his own tortious acts or omissions independent of or in combination with the acts of the servant, *see, e.g., Willis* v. *Fried*, 629 P.2d 1255, 1257 (Okla. 1981); *Missouri, Kansas, & Texas Railroad Co.* v. *Stanley*, 372 P.2d 852, 857 (Okla. 1962), or upon the actions of another employee, *Va. State Fair Ass'n.* v. *Burton*, 182 Va. at 368, 28 S.E.2d at 718. In these situations, a judgment entered against the master will be allowed to stand, notwithstanding the servant's exoneration.

Under the facts in this record, Roughton's liability, if any, was entirely dependent upon, and derivative from, Tarboro's conduct. *Cf. Mims* v. *Bennett*, 160 S.C. 39, 158 S.E. 124 (1931) (action for conversion of automobile where the evidence tended to

show that the employee acted under the antecedent directions of the employer). The jury's verdict exonerating Tarboro, therefore exonerated Roughton. Accordingly, we will reverse the judgment against Roughton and enter final judgment here.

*Reversed and final judgment.*