PRESENT:  All the Justices

THE BYRD THEATRE FOUNDATION

OPINION BY
v.  Record No. 130691        JUSTICE ELIZABETH A. McCLANAHAN
                                FEBRUARY 27, 2014
DAVID M. BARNETT

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

In this premises liability action, The Byrd Theatre

Foundation (the Foundation) appeals a final judgment entered

against it in favor of David M. Barnett (Barnett).  The

Foundation argues that the circuit court erred in denying its

plea of charitable immunity and in failing to instruct the jury

on notice to a corporation.  We will affirm the judgment of the

circuit court.

I.  BACKGROUND

The Foundation, a non-profit corporation qualifying as a

tax-exempt organization under 26 U.S.C. § 501(c)(3), owns the

Byrd Theatre, a national historic landmark and motion picture

theater in Richmond that was opened in 1928 and houses a

Wurlitzer theater pipe organ installed the same year.  The

theater is operated by 1928 Limited, Inc. (1928 Limited), a

non-stock for-profit corporation formed by the Foundation

shortly after its purchase of the Byrd Theatre in 2007.

Barnett, a member of the Foundation's organ restoration

subcommittee, was injured in the theater's organ chamber when

he was performing repairs to the organ and a wooden plank he stepped upon "gave way" causing him to fall four feet to the floor.[1]  Asserting that the wooden plank was not properly secured, Barnett filed suit against the Foundation and 1928 Limited claiming they failed to maintain the premises in a reasonably safe condition and warn him of the dangerous condition of the plank.  Following a jury trial, the jury rendered a plaintiff's verdict against the Foundation and a defense verdict in favor of 1928 Limited.  The circuit court entered judgment on the jury's verdict after denying various post-trial motions filed by the Foundation.

## II.  CHARITABLE IMMUNITY

Prior to trial, the Foundation filed a plea of charitable immunity.  Because Barnett stipulated that the Foundation is a charitable organization operating in accordance with its charitable purpose, the issue presented to the circuit court was limited to whether Barnett was a beneficiary of the Foundation at the time of his accident.

---

[1] The organ chamber is located three stories above the floor level of the auditorium and houses the ranks of pipes and instruments, and other parts of the organ necessary to power the organ and relay signals from the organ console to the music producing parts located in the chamber.  Wooden walking planks are located approximately four feet above the floor of the chamber to provide access to certain parts of the organ.

A.  Evidence and Ruling on Plea

At the hearing on the plea, the Foundation presented evidence that, pursuant to its articles of incorporation, the Foundation was formed "[t]o cultivate, promote, and develop the public's knowledge, awareness, understanding, and appreciation of the performing arts."  After its purchase of the Byrd Theatre, the Foundation, through an amendment to its bylaws, narrowed its mission to owning and restoring the Byrd Theatre "as a grand movie palace and community resource."  In performing this mission, the Foundation's principal activity is raising funds to be used in its restoration of the theater, including the organ.  Because the Foundation does not have any salaried employees, it utilizes independent contractors to perform any such restoration and repair of the theater and the organ.

Barnett is a long-time theater pipe organ enthusiast, who has held memberships and leadership positions in several organ enthusiast clubs that are dedicated to the preservation and appreciation of historic pipe organs.  He purchased a Wurlitzer theater pipe organ in 1978, and over a two-year period, dismantled, restored, reassembled, and installed the organ in his home.  Although Barnett does not play the organ, he is fascinated with the sound and mechanism of theater organs, and has received visiting organists to play the organ installed in

his home.  He is passionate about the preservation and restoration of the Byrd Theatre organ and has attended the Byrd Theatre, over the years, to hear the organ played.

From 1976 to 1990, Barnett consulted on and performed restoration and repair work to the Byrd Theatre organ either as an individual volunteer or with a group of volunteers from the Virginia Theatre Organ Society.  In 2008, Barnett was asked by Robert Gulledge, Jr., the house organist for the Byrd Theatre, to serve on the Foundation's organ subcommittee of the theater restoration committee.[2]  As the "steward" of the organ, the organ subcommittee arranges for and oversees restoration of the organ.  Barnett's duties were of an advisory nature and included making contacts with organ technicians who might enter into contracts with the Foundation for long-term restoration or short-term renovations, as well as reviewing the terms and scope of work included in proposed contracts.

During a period in which the subcommittee was without an organ technician under contract, Barnett volunteered to undertake certain repairs to the organ that were needed to

_____

[2] Barnett testified that between 1990 and 2008, he did not perform work on the organ and was not affiliated with the Byrd Theatre, though he would occasionally bring out-of-town company to see the theater or its lobby.

4

address sound quality issues.[3]  While making repairs to the organ was not within the scope of his duties as a member of the organ restoration subcommittee, the work "needed to be done, and nobody else was available to do it."  Barnett arranged to perform the repairs with Linwood Lunde, a former house organist for the Byrd Theatre who was still affiliated with the theater and obtained a key to the organ chamber from the theater manager.  When Barnett fell in the organ chamber, Lunde was in the auditorium working at the organ console.

Barnett testified that he volunteered to perform the repairs since he "had a passion to have the organ work properly as a service to the Byrd Theatre" and "was happy to do that because, if that organ had not had people take an interest in it, it would have most likely gone silent."  Barnett further testified that he "gain[ed] satisfaction from knowing that [he] was helping the theater" and "getting the work done that needed to be done."  According to Barnett, he "didn't get any other satisfaction out of it."

Based on the evidence presented, the Foundation asserted that Barnett was a beneficiary of the Foundation's charitable

---

[3] Although an organ technician had been under contract, he was unable to resolve the specific problem being addressed by Barnett and Lunde, and the Foundation was in the process of terminating his contract and contracting with a new technician.

purpose through the work he performed since "the sound, the mechanism and the music are all improved, which is something he's interested in and passionate about."  In permitting him to perform this work, the Foundation argued, Barnett was given access to one of the few original installation theater organs in the country and provided the unique opportunity to work on the organ, in pursuance of his long-time hobby and passion.

Rejecting the Foundation's argument, the circuit court concluded that Barnett was not the Foundation's beneficiary at the time of his accident.  Specifically, the circuit court found that "[t]he [Foundation's] accepted charitable charge is to provide a venue for the performing arts" and "[t]he by-law provision regarding restoration and preservation is aimed at facilitating that charge of affording performing arts."  The circuit court found "no evidence that [the Foundation] was extending and [Barnett] was receiving services or a charitable benefit consistent with [the Foundation's] charitable aims."  Thus, according to the circuit court, "[g]iven the [Foundation's] charitable purpose to provide a facility for the performing arts and, according to its by-laws, to preserve and restore the Byrd Theatre, including the organ, it cannot be said that [Barnett] was the object of the charity's bounty at the time [of his accident]."

B.  Analysis

6

The doctrine of charitable immunity, being firmly embedded in the law of this Commonwealth, is "grounded in the public policy that the resources of charitable institutions are better used to further the institution's charitable purposes, than to pay tort claims lodged by the charity's beneficiaries." Ola v. YMCA of S. Hampton Roads, Inc., 270 Va. 550, 555, 621 S.E.2d 70, 72 (2005). Consistent with this policy, an entity that is organized for a recognized charitable purpose and operates in accord with that purpose is immune from liability based upon claims of negligence asserted by beneficiaries of the entity's charitable bounty. Ola, 270 Va. at 556, 621 S.E.2d at 72-73; see also University of Va. Health Servs. Found. v. Morris, 275 Va. 319, 331-34, 657 S.E.2d 512, 517-20 (2008); Straley v. Urbanna Chamber of Commerce, 243 Va. 32, 35-38, 413 S.E.2d 47, 49-51 (1992); Thrasher v. Winand, 239 Va. 338, 340-42, 389 S.E.2d 699, 701-02 (1990). This is so because "[o]ne who accepts the benefit either of a public or a private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting those servants." Weston v. Hospital of St. Vincent, 131 Va. 587, 604, 107 S.E. 785, 791 (1921) (quoting

7

Hospital of St. Vincent v. Thompson, 116 Va. 101, 109, 81 S.E. 13, 16 (1914).[4]  Thus, "[c]haritable immunity applies only to claims of negligence asserted by those who accept the charitable institution's benefits."  Morris, 275 Va. at 331, 657 S.E.2d at 517.

The dispositive question in this case, therefore, is whether Barnett was in a "beneficial relationship" with the Foundation at the time of his accident.  Ola, 270 Va. at 563, 621 S.E.2d at 77.  As we have explained, "a beneficiary is a person who receives something of value, which the organization by its charitable purpose, undertakes to provide."  Id. at 564, 621 S.E.2d at 77 (emphasis added).  Based on the Foundation's articles of incorporation and amended bylaws, its charitable aim was to cultivate an appreciation for the performing arts through restoration and preservation of the Byrd Theatre and the organ.  The Foundation was neither organized nor operated for the purpose of providing theater organ enthusiasts an opportunity to repair or restore the Byrd Theatre organ.  At the time of Barnett's accident, the Foundation was not undertaking to provide Barnett with the benefit of an

_____

    [4] A charity is immune from liability for the negligent acts
of its agents and employees provided due care has been
exercised in their selection and retention.  However, the
shield of immunity does not extend to acts of willful or gross
negligence.  Ola, 270 Va. at 556, 621 S.E.2d at 72.

8

opportunity to repair its organ.  In short, the Foundation's mission was to restore and preserve the theater, including its organ; not to provide a venue for individuals, such as Barnett, to practice their hobby of restoring organs.

To the contrary, the Foundation hired contractors to perform the organ restoration and repairs.  In contrast to accepting a service that the Foundation operated to provide, Barnett was providing a service to the Foundation in furtherance of the Foundation's own aim of preserving and restoring the organ, which otherwise would have been performed by a paid contractor. As Barnett testified, he "had a passion to have the organ work properly as a service to the Byrd Theatre" and "was happy to do that because, if that organ had not had people take an interest in it, it would have most likely gone silent."  According to Barnett, he gained satisfaction from "knowing that [he] was helping the theater" and "getting the work done that needed to be done."  Based on the evidence, therefore, the circuit court properly found that Barnett was not receiving the bounty of the Foundation's charitable works at the time of his accident.[5]

---

[5] The Foundation readily acknowledges that Barnett was providing a service to the Foundation but argues that this fact, alone, should not exclude him from the Foundation's class of beneficiaries.  We agree and, therefore, our holding does not stand for the proposition that all persons who provide a service or other benefit to the charity cannot be deemed

9

We reject the Foundation's position that Barnett's passion for the preservation and restoration of the Byrd Theatre organ and receipt of personal satisfaction from contributing to such restoration established a "beneficial relationship" with the Foundation.  It could be said that most volunteers receive gratification through their charitable works and that many likely provide services consistent with their own hobbies or interests.  But, the receipt of personal satisfaction or pleasure gained through the donation of one's services to a charity does not create a "beneficial relationship" with the charity for purposes of charitable immunity.

In sum, we "find the [circuit] court's analysis well reasoned and amply supported by the evidence."  Ola, 270 Va. at 559, 621 S.E.2d at 74.  Therefore, the circuit court did not err in denying the Foundation's plea of charitable immunity.

### III.  JURY INSTRUCTIONS

The Foundation also asserts that the circuit court erred in refusing to instruct the jury regarding imputed actual notice from agents to corporations.

---

beneficiaries thereof.  The adoption of any such rule would be inappropriate because the determination is necessarily driven by the specific facts of the case, and in particular, the activity engaged in by the tort claimant at the time of the accident.

The evidence at trial proved that 1928 Limited, as the manager of the Byrd Theatre, operated the theater and maintained its premises, except with regard to the organ, which was maintained by the Foundation. Barnett presented evidence that an employee of 1928 Limited had knowledge of the condition of the wooden plank on which Barnett was standing when he fell and argued that such notice should be imputed to 1928 Limited and the Foundation. The Foundation took the position that this knowledge could not be imputed to the Foundation since the 1928 Limited employee learned of the condition of the plank many years prior to his employment and, in any event, 1928 Limited was not permitted to work on the organ.

The Foundation offered the following jury instruction, which was rejected by the circuit court:

A corporation knows a fact only as its officers and agents know it. The corporation does not know all that its agents know, but only what comes to the agents while acting for the corporation within the scope of their agency, when it is the agents' duty to report their knowledge to the general officer or agents of the company.

The Foundation argued that the proposed jury instruction tracked the language from Rudolph v. Farmers' Supply Co., 131 Va. 305, 310-11, 108 S.E. 638, 639 (1921) and properly addressed the imputed notice issue raised by Barnett. According to the Foundation, "[n]otice was a critical issue in the case, and an instruction on imputed actual notice was

11

necessary for the jury to determine whether [the employee's] knowledge from the early 1980's imputed to 1928 [Limited] and the Foundation."[6]

It is unnecessary for us to determine whether the circuit court erred in refusing the Foundation's proposed jury instruction on imputed notice.  The jury found in favor of 1928 Limited and, therefore, absolved the Foundation from any liability arising from 1928 Limited's conduct.  See Virginia State Fair Ass'n v. Burton, 182 Va. 365, 372, 28 S.E.2d 716, 719 (1944) (verdict in favor of agent and against principal necessarily exonerated principal of liability arising from agent's alleged negligence).  Furthermore, the jury was entitled to find the Foundation liable, based on the Foundation's independent negligence, without regard to 1928 Limited's liability or conduct.[7]  See Wintergreen Partners, Inc.

_____

[6] Barnett also offered an instruction on imputed notice that was refused by the circuit court.

[7] In particular, the jury was given the following instruction governing premises liability of owners or occupants:

An owner or occupant of premises does not guarantee an invitee's safety, but has the duty:
(1) to use ordinary care to have the premises in a reasonably safe condition for an invitee's use consistent with the invitation unless the invitee knows, or should have known, of the unsafe condition; and
(2) to use ordinary care to warn an invitee of any unsafe condition about which the owner or occupant knows, or by

12

v. McGuireWoods, LLP, 280 Va. 374, 379, 698 S.E.2d 913, 916 (2010). Therefore, because the jury rejected a theory of liability based on 1928 Limited's knowledge of the unsafe condition of the wooden plank, but rather based its verdict on the separate negligence of the Foundation, "it is immaterial" whether notice by 1928 Limited's employee could properly be imputed to 1928 Limited and the Foundation.[8] Virginia State Fair Ass'n, 182 Va. at 372, 28 S.E.2d at 719. Accordingly, any error by the circuit court in failing to instruct the jury on imputed notice would be harmless.

IV. CONCLUSION

---

the use of ordinary care should know, unless the unsafe condition is open and obvious to a person using ordinary care for his own safety.
If an owner or occupant fails to perform either or both of these duties, then it is negligent.


[8] The Foundation contends that Barnett is precluded from arguing, on appeal, that the jury could properly find the Foundation independently negligent based on the premises liability instruction because the only theory Barnett argued to the jury was that the Foundation was liable based on knowledge imputed from 1928 Limited's employee to 1928 Limited and the Foundation. This contention cannot be sustained because the Foundation did not object to the premises liability instruction and has not assigned error related to the sufficiency of the evidence to support a verdict based on that instruction. See Wintergreen Partners, 280 Va. at 379, 689 S.E.2d at 916.

13

For the foregoing reasons, we will affirm the judgment of the circuit court.

Affirmed.