## Richmond

W. S. Cook, Sheriff, Etc., Adm'r, Etc. v. Virginia Holsum
Bakeries, Incorporated.

March 6, 1967.

Record No. 6368.

Present, All the Justices.

*Robert P. Boyle* (*James H. Michael, Jr.; Boyle & Wood; Michael
and Dent,* on brief), for the plaintiff in error.

*Robert E. Taylor (Taylor, Michie and Callaghan,* on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

Virginia Holsum Bakeries, Incorporated, instituted this action against W. S. Cook, Sheriff, etc., administrator of the estate of Marvin C. Lucas, to recover for damages to its tractor-trailer resulting from a collision with an automobile operated by Lucas. After a jury found for the defendant, Cook, the court below set aside their verdict and entered judgment for plaintiff, Holsum, in the sum of $5,982.31, the stipulated amount of damages. We granted defendant a writ of error.

Plaintiff moved to dismiss the writ on the ground that defendant's counsel did not give its counsel a reasonable opportunity to examine the original or a copy of the narrative of the testimony and incidents of trial in accordance with Rule 5:1 § 3(f), Rules of Court.

The record shows that final judgment was entered by the trial court on August 23, 1965. Counsel for defendant notified counsel for plaintiff on October 15, 1965, that a narrative of the evidence and incidents of trial would be tendered to the trial judge at 3 p.m., October 20, 1965. On October 19 counsel for plaintiff requested and was furnished a copy of the proposed narrative. At a conference in the afternoon of the same day, counsel for both parties went over the statement and agreed upon certain corrections and additions.

At the hearing on October 20, counsel for plaintiff said he had not been given a reasonable opportunity to examine the statement and objected to the trial judge's certifying it. He suggested numerous changes, and the trial judge ordered the statement to be amended as suggested by counsel for plaintiff. The revised statement was tendered to the trial judge the next day, October 21, and signed by him on the same day.

What constitutes reasonable opportunity to examine a narrative of the evidence to be tendered to the trial judge must be determined by the facts of each case. See *Bacigalupo v. Fleming,* 199 Va. 827, 835, 102 S. E. 2d 321, 326 (1958).

*Snead* v. *Commonwealth,* 200 Va. 850, 108 S. E. 2d 399 (1959), relied upon by plaintiff in support of its argument to dismiss the writ of error, is clearly distiguishable on its facts from the present case.

We are of opinion that in the instant case counsel for plaintiff was given a reasonable opportunity to examine the narrative, which con-

sisted of only twelve pages by actual count. The narrative was amended to meet the suggested changes of counsel for plaintiff, and he conceded in oral argument before us that the statement signed by the trial judge was correct. Hence plaintiff's motion to dismiss the writ of error for failure to comply with the requirements of Rule 5:1 § 3 (f) is overruled.

■ The narrative statement of the evidence shows that the collision occurred at approximately 11:30 p.m., October 18, 1963, about ten miles north of Charlottesville on route 29, which was a two-lane highway. At the point of the collision the highway was straight and level, with a solid center line governing southbound traffic and a broken line indicating passing was permissible for northbound traffic. It was a clear night, and the road was dry.

Marvin D. Puckett, Jr., plaintiff's employee, testified that he was operating the tractor-trailer in the northbound lane at a speed of 41 miles per hour. He said he first saw the Chevrolet automobile operated by Lucas when it was approximately a quarter of a mile away in the southbound lane. When the Lucas car was 50 feet from him, it suddenly veered into his lane and collided with the left front of his vehicle. He admitted that at an earlier trial in the county court he had stated that the Lucas car was only 15 or 20 feet away when it crossed into the northbound lane.

After the collision the tractor-trailer went across the southbound lane, down an embankment, and came to rest on its right side 6 or 7 feet west of the hard surface. The Lucas vehicle slid south along the southbound lane and across the shoulder, coming to rest on its top on the west side of the road, south of the tractor-trailer. Clyde J. Teeder, a passenger in the Lucas automobile, who Puckett first thought was the operator, was thrown out of the car before it caught fire. Puckett was treated for a small cut on the back of his head at the University of Virginia Hospital and was discharged shortly thereafter.

Kenneth Carey and Curtis Smith, plaintiff's shop foreman and sales manager, respectively, arrived at the accident scene at 2 a.m., October 19, 1963, and at that time the Lucas vehicle had been removed. Both men stated that a headlight rim and license plate from the tractor-trailer were lying on the east shoulder of the highway near the scene of the collision.

Carey also testified that the tractor-trailer assembly locked when the collision occurred, causing it to veer to the left. He observed tire

marks made by the tractor-trailer beginning 8 to 12 inches east of the center line of the highway and veering westward, as shown by an exhibit in evidence. Smith said that the marks began 6 or 7 inches east of the center line and extended northwesterly at a 45 degree angle to the rear of where the tractor-trailer came to rest.

Dr. William Zuk, an expert on structural engineering, visited the scene of the accident a year later and testified without objection. He said that it was his opinion that when the left front portion of the tractor and the left front of the Lucas car collided, the Lucas car was caused to ride up on the left front fender of the tractor-trailer, so that the car was turned over on its right side and then on its top. He added that locking the wheels of the tractor-trailer would cause it to swerve to the left, and the centrifugal force would cause it to fall on its right side as it came to rest.

Dr. Zuk said the Lucas car was 6 feet 8 inches wide, and he believed that three gouge marks in the highway, appearing in a picture exhibit, 5 feet 3 inches, 5 feet 5 inches, and 6 feet 3 inches west of the center line, were caused by the Lucas vehicle when it turned over. Any debris found in the highway would have come from the Lucas vehicle because it was lighter than the tractor-trailer.

Trooper T. E. Wood arrived at the scene fifteen minutes after the accident. He testified that he found a large quantity of debris from the vehicles, including glass and dirt, west of the center of the southbound lane but none in the northbound lane. He saw skid marks beginning at the center line of the highway. They extended 30 feet to the western edge of the pavement and then continued 27 feet north to the rear of the trailer, which was on its right side just off the paved surface. He found the Lucas vehicle, damaged on its left front and resting on its top, headed south on the west shoulder of the highway, approximately 36 yards south of the rear of the tractor-trailer.

When Wood arrived at the scene, he was not aware that Lucas was in the burning car. Not until the wreckage was removed to a garage was it discovered that Lucas had been killed and that his body was still in the car.

Immediately after Puckett was released from the hospital Trooper Wood talked with him. Wood testified that Puckett told him he did not remember what happened. When Wood talked with Puckett again several days later, Puckett said the accident happened so quickly that he did not know what happened and that he did not see the Lucas car until the collision. He also told Wood that he could have

been over in the southbound lane but he could not be certain. At the trial Puckett denied making any of these statements to the trooper.

Trooper W. L. Bowman arrived at the scene a few minutes ahead of Trooper Wood. After Wood's arrival Bowman directed traffic and did not investigate the accident. He did say, however, that there were no marks left on the highway by the Lucas vehicle.

Clyde J. Teeder testified that he was hitchhiking and Lucas had given him a ride. Just before the accident he was sitting in the front seat turning the radio dial. He noticed nothing unusual about the way Lucas was driving, nor did he feel the car swerve or lurch. Immediately before the collision he saw something red (the color of the tractor-trailer), and the next thing he knew was when he awoke in the hospital.

The question presented is whether the trial court erred in setting aside the jury verdict for the defendant and entering judgment for the plaintiff.

We have repeatedly said that the jury is the proper tribunal to decide the question of negligence if reasonable men may differ as to the conclusion to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony. *Canupp* v. *Wade*, 205 Va. 850, 855, 140 S. E. 2d 659, 662 (1965); *Adams* v. *Allen*, 202 Va. 941, 946, 121 S. E. 2d 364, 368 (1961); 13 Mich. Jur., Negligence, § 64, p. 595.

Resolving conflicts in the evidence is a traditional prerogative of the jury, and a determination as a matter of law that a party is guilty of, or is free from, negligence should be made only where the evidence is such that reasonable men, after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion. *Giannone* v. *Johnson, Adm'x*, 204 Va. 493, 496, 499, 132 S. E. 2d 445, 448, 449 (1963), reversing action of trial court in setting aside jury verdict.

Plaintiff argues that since the driver of the tractor-trailer, the only eye witness to the accident, testified that the collision occurred when the Lucas vehicle suddenly crossed into the northbound traffic lane, and the physical facts and the inferences therefrom support his testimony, reasonable men could reach but one conclusion. Hence it says the trial court correctly held as a matter of law that Lucas was negligent.

We do not agree with plaintiff's argument. Trooper Wood testified that Puckett told him shortly after the accident that he did not remember what happened. When Wood talked to him again several

days later, Puckett said he did not know what happened; that he did not see the Lucas car until the collision; and that his tractor-trailer could have been over in the southbound lane. Although Puckett denied making the statements attributed to him by Trooper Wood, his credibility as a witness was attacked. Thus the jury had a right to conclude that he did make the statements to Wood and that the accident did not occur the way Puckett testified that it did.

There was a conflict in the testimony as to whether the marks made by the tractor-trailer began in the center of the highway, as Trooper Wood testified, or several inches from the center line in the northbound lane, as plaintiff's employees Carey and Smith said. From this conflicting evidence it cannot be said as a matter of law that the collision occurred in the northbound lane.

It was uncontradicted that all of the debris was found in the southbound lane, and the jury could have inferred, in the light of other evidence before them, that the collision did occur in the southbound lane. See *Burke* v. *Scott*, 192 Va. 16, 22-23, 63 S. E. 2d 740, 744 (1951).

In view of the conflicts in the evidence and the inferences that may be drawn from the facts proven, it cannot be said that reasonable men could conclude only that Lucas caused the accident by negligently crossing into the northbound lane in the path of plaintiff's vehicle. Hence it was error for the trial court to set aside the jury's verdict for the defendant and enter judgment for the plaintiff.

For the reasons stated, the verdict of the jury is reinstated and final judgment is here entered for the defendant.

*Reversed and final judgment.*