## Staunton

### Willie Whitfield, Administrator, Etc. v. Whittaker Memorial Hospital, Et Al.

September 5, 1969.

Record No. 6963.

Present, All the Justices.

*Stanley E. Sacks (Allan D. Zaleski; Sacks, Sacks, Kendall & Tavss,* on brief), for plaintiff in error.

*Fred W. Bateman; George H. Heilig, Jr.; Daniel W. Wilkinson, Jr. (John F. Rixey; Bennett L. Stein; Rixey & Rixey; West and Wilkinson,* on brief), for defendants in error.

I'ANSON, J., delivered the opinion of the court.

This action was instituted by Willie Whitfield, administrator of the estate of Janice Elizabeth Bryant, deceased, against the defendants, Whittaker Memorial Hospital, Dr. Russell E. Reid and Sara Sayles, to recover damages for the alleged wrongful death of plaintiff's decedent, who died before regaining consciousness after surgery. There was a jury trial, and at the conclusion of plaintiff's evidence defendants moved the court to strike out plaintiff's evidence and to enter summary judgment in their favor. The trial court granted the motions of the hospital and Dr. Reid, but overruled the motion of Mrs. Sayles.

After Mrs. Sayles submitted her evidence, plaintiff moved the court to hold as a matter of law that she was guilty of negligence and to submit to the jury only the question of damages. The motion was overruled, and the jury returned a verdict for Mrs. Sayles. Judgment was entered on this verdict, and we granted plaintiff a writ of error as to all three of the defendants.

Plaintiff contends that the trial court erred (1) in not holding as a matter of law that Mrs. Sayles was guilty of negligence; (2) in

amending his instruction C-1; (3) in taking judicial notice that the hospital is a charitable institution; (4) in holding as a matter of law that the hospital was not negligent in the hiring, retention and selection of Mrs. Sayles; (5) in holding as a matter of law that Mrs. Sayles was not an agent of Dr. Reid; and (6) in holding as a matter of law that Dr. Reid was not negligent in the post-operative procedure.

Plaintiff's decedent, hereinafter referred to as patient, was admitted to the hospital on March 14, 1964. At 8:30 a.m. on March 16 the patient was taken to the operating room and prepared for a tonsillectomy and the removal of several teeth. Mrs. Sayles, employed by the hospital as a nurse-anesthetist, administered the anesthetic. She commenced the procedure with an intravenous injection of sodium pentothal to induce sleep. Ether was then administered through an "ether hook" placed in the side of the patient's mouth, and oxygen through a nasal catheter, or rubber tube, taped to her face. As soon as the patient was in an unconscious state, several decayed teeth were removed by a dentist. Dr. Reid then removed her tonsils, and the operation was nearly complete when Mrs. Sayles called Dr. Reid's attention to the fact that the patient's stomach was distended; he simultaneously noticed a discoloration of her face. Attempts to relieve the pressure from the gases which had entered the patient's stomach were unsuccessful, and she died at 6:05 p.m. that same day.

Dr. Reid, called as an adverse witness, testified that he had selected the general anesthetic to be used. He directed Mrs. Sayles when to administer the anesthetic and was standing beside her when she started the anesthesia procedure. He watched her tape the catheter to the patient's face, and inspected it. When he saw that the patient was reacting properly he stepped out of the operating room for about ten minutes to "scrub up." He stated that Mrs. Sayles followed the standard and accepted medical procedure in Newport News and similar communities for administering anesthetics. In describing the anesthesia procedure, he said that it is very important to keep the nasal catheter at the tip of the uvula, or soft palate, so the mixture of ether and oxygen will go into the lungs; otherwise the mixture could go down the esophagus into the stomach. When he started the removal of the patient's tonsils the catheter was in its proper position. At one point during the operation he had the catheter disengaged from the tape and shortened so that it would not interfere with his examination of the patient's adenoids. As soon as the complications arose, he at-

tempted without success to relieve the pressure in the patient's stomach by means of a rectal tube, and he then had her removed to the recovery room where further efforts were made to bring her out of shock. Her blood pressure dropped until it measured fifty over zero, and blood and fluids were administered in an effort to bring the pressure up. X-rays showed that her stomach had ruptured and that gas had spilled into her abdominal cavity. Although the operating room was prepared, he did not feel that the patient could survive an immediate operation.

Mrs. Sayles testified that she is a graduate nurse, and in 1954 she received a certificate as a nurse-anesthetist from a school approved by the American Medical Association. She said that she had administered anesthetics between three and four thousand times. Throughout the administration of the anesthetic she watched the patient's circulation, ventilation and blood pressure. Dr. Reid was her supervisor when she administered the anesthetic to the patient. Because of her position at the head of the operating table she could not see the location of the catheter in the patient's mouth during the operation.

Dr. Grannum, the hospital administrator, testified that the hospital is an eleemosynary institution. He further said that the hospital did not have an anesthesiologist, a medical doctor with special training in administering anesthestics; that Mrs. Sayles was one of the two nurse-anesthetists on the hospital staff; that no complaints had been received relative to the performance of her duties; and that the hospital billed the patient for the services rendered by the anesthetist.

Dr. Douglas W. Eastwood, an anesthesiologist and professor of anesthesia at the University of Virginia, testified that he had reviewed the patient's hospital records and it was his opinion that the patient died in shock from a rupture of the stomach due to insufflation of gas, which probably came from the nasal oxygen catheter. He said that in the administration of this type of anesthetic there is a known risk "which has to be looked for and stopped." Certain safety standards must be followed, one of which is to have a system whereby any gas going into the stomach can be detected. This is most easily done by putting a precordial stethoscope on the patient's chest so that gases can be heard if they go down the esophagus into the stomach. He was of the opinion that since no method was used to detect gases going into the patient's stomach, the procedure followed in administering the anesthetic deviated from the standard and accepted medical practice then existing in Newport News and other similar

communities. He said that the nasal catheter would have had to slip an inch to an inch and a half to cause the distention of the stomach. He concluded by stating that he knew of no way for such a result to occur other than impropriety in the anesthesia procedure itself.

Dr. Eastwood was also of the opinion that the postoperative treatment was inadequate by "the standards of management [in any community] of any acute trauma by whatever cause." It was necessary to perform an operation before the patient could be brought out of shock, and the blood pressure would probably not have been corrected until the swollen condition of her stomach was relieved. If an operation had been performed, it probably would have saved the patient's life.

Dr. C. W. Scott and Dr. G. P. Carter both testified that the anesthetic was administered in accordance with the standard and accepted medical practices in the community of Newport News and in similar communities.

■ Plaintiff contends that the court erred in not holding as a matter of law that Mrs. Sayles was guilty of negligence and in not submitting to the jury the question of damages alone.

We have repeatedly said that the jury is the proper tribunal to decide whether a party is guilty or not guilty of negligence when the evidence is conflicting; and that the question of negligence should be withdrawn from the jury only where the evidence is such that reasonable men, after weighing the evidence and the inferences therefrom, could reach but one conclusion. *Giannone v. Johnson, Adm'x*, 204 Va. 493, 496, 132 S. E. 2d 445, 448 (1963); *Cook v. Virginia Holsum Bakeries, Inc.*, 207 Va. 815, 819, 153 S. E. 2d 209, 212 (1967).

Here the evidence is conflicting as to whether Mrs. Sayles deviated from the customary and acceptable procedures in her community and in similar communities at that time in administering the anesthetic to the patient. Thus we cannot say as a matter of law that Mrs. Sayles was guilty of negligence and that the trial court erred in not submitting to the jury the question of damages alone.

■ Plaintiff contends that the court erred in deleting the word "possess" from instruction C-1, which read as follows:

"It was the duty of the defendant, Sara Sayles, to *possess* and exercise such reasonable and ordinary skill, care and diligence as are ordinarily exercised by the average of the members of her profession in good standing, in similar localities and in the same general

line of practice, with regard being had to the state of medical science at the time. * * *" (Italics supplied.)

He claims the action of the court took from the jury the issue of whether or not Mrs. Sayles posessed the requisite skill to administer an anesthetic.

It was not error to amend the instruction, as all the evidence showed that Mrs. Sayles did possess the proper training and requisite skill to administer anesthetics. Moreover, if the word "possess" had not been deleted, the instruction would have been confusing to the jury because of the language following it.

Counsel for plaintiff stated in oral argument before us that he was not asking for a new trial as to the hospital unless we reverse the judgment of the lower court as to Mrs. Sayles. Hence, in the light of our affirmance of the judgment as to Mrs. Sayles, it is not necessary for us to consider assignments of error (3) and (4).

We are constrained, however, to point out that the trial court should not have taken judicial notice that the hospital is a charitable institution. Courts may take judicial notice of facts which are commonly known from human experience, but facts which are not judicially cognizable must be proved, even though known to the judge as an individual. *Darnell* v. *Barker*, 179 Va. 86, 93, 18 S. E. 2d 271, 275 (1942).

In order to determine whether or not a hospital is a charitable organization, evidence must be presented to show the purpose for which it was formed and if it is maintained for gain or profit. *Danville Community Hospital* v. *Thompson*, 186 Va. 746, 753, 43 S. E. 2d 882, 884 (1947); *Memorial Hospital* v. *Oakes, Adm'x*, 200 Va. 878, 883, 108 S. E. 2d 388, 392 (1959).

Plaintiff contends that Mrs. Sayles was an agent of Dr. Reid and that he was liable for her negligent acts. Thus he argues that the trial court erred in striking the evidence as to Dr. Reid and in entering judgment in his behalf.

In determining whether a person is the agent of another, it is necessary that he not only be subject to the latter's control, or right of control, with regard to the work to be done and the manner of performing it, but the work has to be done on the business of the principal or for his benefit. Actual control, however, is not the test; it is the right to control which is determinative. Restatement, Agency 2d, § 220(1), 1958; 35 Am. Jur., Master and Servant, § 539, p. 967; 12 Mich. Jur., Master and Servant, § 4, p. 459.

The question of whether a nurse-anesthestist employed by a hospital is an agent of the surgeon when administering an anesthetic is one of first impression in Virginia. Some courts in other jurisdictions have held that a nurse-anesthetist is in the category of a "lent servant" if the surgeon has the right to direct and control her in the performance of her work, and that he is liable for any injury arising out of her negligence in administering an anesthetic. *Jackson* v. *Joyner*, 236 N. C. 259, 261, 72 S. E. 2d 589, 591 (1952); *McKinney* v. *Tromly*, 386 S. W. 2d 564, 566, 12 A.L.R. 3d 1011 (Tex.Civ.App. 1964); Annotation, 12 A.L.R. 3d 1017, 1025, 1026.

Counsel for Dr. Reid cite a number of cases in support of the trial court's holding that as a matter of law Mrs. Sayles was not an agent of Dr. Reid because each, being an expert in his own field, has a separate and distinct function, and therefore one is not responsible for the negligence of the other. The cases relied upon are factually different from the present case. In most of them the anesthetic was administered by a doctor who was also an anesthesiologist, and the evidence showed that the surgeon had no control over him.

In *Kemalyan* v. *Henderson*, 45 Wash. 2d 693, 277 P. 2d 372, 376 (1954), said by Dr. Reid's counsel to be on "all fours" with the facts in the present case, it was held that the question of whether the nurse-anesthetist, an employee of the hospital, was an agent of the doctor or of the hospital was properly submitted to the jury for their determination. For a similar holding see, *Cavero* v. *Franklin General Benevolent Society*, 214 P. 2d 854, 856 (Cal. 1950). See also, *Cavero*, 223 P. 2d 471, 475, 476 (Cal. 1950).

In the present case there was evidence from which the jury could determine that Mrs. Sayles was the temporary agent of Dr. Reid. He selected the kind of anesthetic to be administered, told her when to begin, and could stop it at any time. He had supervisory control over Mrs. Sayles in the administration of the anesthetic. Whether Mrs. Sayles was an agent of Dr. Reid was a question of fact, and the issue should have been permitted to go to the jury.

However, counsel for Dr. Reid argue that since the jury found that Mrs. Sayles was not negligent, the question of Dr. Reid's negligence by reason of the agency relationship is "at most a moot one."

On the other hand, plaintiff contends that since Mrs. Sayles was the agent of Dr. Reid, who was present and had supervisory control over the administration of the anesthetic, the jury's finding for Mrs. Sayles did not necessarily relieve Dr. Reid of liability for her acts or omissions.

It is settled law in this State that when a master and servant are sued together for the same act of negligence, and the master's liability; if any, rests wholly upon the servant's negligence, a verdict for the servant necessarily exonerates the master. *Monumental Motor Tours, Inc.* v. *Eaton*, 184 Va. 311, 314, 315, 35 S. E. 2d 105, 106 (1945); *Va. State Fair Ass'n* v. *Burton*, 182 Va. 365, 368, 28 S. E. 2d 716, 717 (1944).

Here the plaintiff predicates the liability of Dr. Reid only upon the negligent acts or omissions of Mrs. Sayles. Since the jury found that Mrs. Sayles was not negligent, it necessarily follows that the jury's verdict exonerated Dr. Reid of any vicarious liability to the plaintiff.

■ Lastly, plaintiff contends that the trial court erred in not submitting to the jury the question of Dr. Reid's negligence in the postoperative procedure.

The standard of care required of a physician or surgeon is succinctly stated in *Reed* v. *Church*, 175 Va. 284, 292, 293, 8 S. E. 2d 285, 288 (1940), as follows:

"A physician holds himself out as possessing the knowledge and ability necessary to the effective practice of medicine. * * * However, he is not an insurer, nor is he held to the highest degree of care known to his profession. * * * He must exhibit only that degree of skill and diligence employed by the ordinary, prudent practitioner in his field and community, or in similar communities, at the time."

*Accord, Fox* v. *Mason*, 139 Va. 667, 670, 124 S. E. 405, 406 (1924); *Easterling* v. *Walton*, 208 Va. 214, 218, 156 S. E. 2d 787, 790 (1967).

Here Dr. Eastwood stated categorically that in his opinion, notwithstanding the fact that the patient's blood pressure was fifty over zero, the treatment of the patient during the postoperative period was inadequate with respect to the standards of the Newport News community and similar communities at that time in that an immediate operation to relieve the inflated condition of her stomach was not performed. Had such an operation been performed, he concluded, it probably would have saved the patient's life.

Council for Dr. Reid argue that Dr. Eastwood's statement that if an operation had been performed it "probably" would have saved the patient's life was mere speculation.

We do not agree with this argument. Dr. Eastwood's testimony

clearly sets forth the standard of care owed by a surgeon in Newport News and in similar communities at the time when presented with a situation such as the one confronted by Dr. Reid.

When a physician's or surgeon's negligent action or inaction has effectively terminated a person's chance of survival, he will not be permitted to raise conjectures as to possible chances for survival that he has put beyond realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened if certain actions had been taken. The law does not in all circumstances require a plaintiff to show to a certainty that a patient would have lived had he been operated on promptly. *Hicks* v. *United States,* 368 F. 2d 626, 632 (1966); *Harvey* v. *Silber,* 300 Mich. 510, 2 N. W. 2d 483, 488 (1942). *Accord, Gardner* v. *National Bulk Carriers, Inc.,* 310 F. 2d 284, 91 A.L.R. 2d 1023 (4th Cir. 1962), cert. denied, 372 U. S. 913, 83 S. Ct. 728, 9 L. ed. 2d 721 (1963).

Here the evidence is conflicting as to whether Dr. Reid exercised the degree of care required of a surgeon in Newport News and similar communities at the time, and a question of fact was presented. Hence we hold that it was error for the trial court to withdraw from the jury the question of whether or not Dr. Reid was negligent in the post-operative procedure.

For the reasons stated, the judgments are

*Affirmed as to Whittaker Memorial Hospital and Sara Sayles; and reversed and remanded for a new trial as to Dr. Russell E. Reid.*