# CIRCUIT COURT OF THE CITY OF RICHMOND

Melissa Anne Irby, et al.

v.

Richmond Pediatric
Associates, Inc.

August 31, 1989

Case No. LR-4601-1

By JUDGE RANDALL G. JOHNSON

This medical malpractice case is before the court on defendant's demurrer and motion to sever. The motion for judgment alleges that Melissa Anne Irby, the infant plaintiff, suffered permanent injuries as a result of the negligence of David L. Arkin, M.D., the agent, servant, or employee of defendant, Richmond Pediatric Associates, Inc. In addition to seeking compensation for Melissa's injuries, the motion for judgment seeks to join her parents' claims for "consequential damages including hospital, medical, nursing, drug and related pecuniary expenses both in the past and in the future in an effort to care for and treat their child; the reasonable value of the parents' nursing care or services rendered gratuitously for their daughter's benefit; loss of the mother's and father's wages and loss of their future wages and earning capacity; loss of Melissa's services and/or the reasonable value of said services before she obtains majority and thereafter."

Defendant's demurrer is made on two grounds. First, defendant challenges that portion of the motion for judgment

which alleges that defendant's negligence caused plaintiff to "lose a substantial possibility of avoiding severe, permanent and disabling injuries," commonly referred to as "loss of chance." Second, defendant contends that the allegation in the motion for judgment that defendant acted directly and indirectly, vicariously, ostensibly, and apparently through its agent, servant, or employee Dr. Arkin "are insufficient as alleged and are contradictory to the previous allegations of the motion for judgment."[1]

Defendant's motion to sever seeks to separate the parents' claims for their gratuitous nursing care or services, loss of wages and earning capacity, and loss of Melissa's services from Melissa's claims and the parents' claim for pecuniary loss in caring for and treating Melissa.

## 1. *Loss of Chance*

Plaintiff's theory of the doctrine of loss of chance is best stated in two cases decided by the United States Court of Appeals for the Fourth Circuit. In *Hicks v. United States*, 368 F.2d 626 (4th Cir. 1966), decided under Virginia law, plaintiff's decedent went to a Navy dispensary around 4:00 a.m. complaining of intense abdominal pain and continual vomiting which had begun suddenly an hour before. After a ten-minute examination, the doctor told her she had a "bug" in her stomach, prescribed pain medication, and released her with instructions to return in eight hours. The patient returned to her home, and after another episode of vomiting, took the prescribed medication and lay down. Around noon, she arose and drank a glass of water, vomited immediately, and fell to the floor unconscious. She was rushed to the dispensary, could not be revived, and was pronounced dead at 12:48 p.m. An autopsy revealed that

---

[1] Actually, defendant's written demurrer also sought dismissal of Melissa's parents' claims for gratuitous nursing care, loss of wages and earning capacity, and loss of Melissa's services. In its rebuttal memorandum in support of its demurrer and motion to sever, however, defendant states that it "does not contend . . . that Mr. and Mrs. Irby are not entitled to compensation for the various losses they allege to have suffered." The court treats this statement as an abandonment of defendant's demurrer to the parents' claims and accordingly overrules the demurrer in that regard.

she had a high obstruction, diagnosed formally as an abnormal congenital peritoneal hiatus with internal herniation into this malformation of some of the loops of the small intestine. Death was due to a massive hemorrhagic infarction of the intestine resulting from its strangulation.

The trial court, sitting without a jury and finding that the government's doctor did not act negligently, dismissed the complaint. On appeal, the government argued that even if negligence were shown, there was no proof that the alleged erroneous diagnosis and treatment were the proximate cause of death, asserting that even if surgery had been performed immediately, it is mere speculation to say that it would have been successful. The Fourth Circuit disagreed. First, the court reversed the district court's finding on negligence and held that the government's doctor was negligent in his diagnosis and treatment of the deceased. Next, and more important for our purposes here, the court held that defendant could not escape liability by arguing that the patient might have died even if no negligence occurred:

> When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. 368 F.2d at 632.

Any doubt as to whether the Fourth Circuit intended its holding in *Hicks* to be interpreted simply as a statement of the standard of proof of causation or as the recognition of a separate cause of action was completely erased in *Waffen v. U.S. Dept. of Health and Human Services*, 799 F.2d 911 (4th Cir. 1986), a case involving Maryland law. In *Waffen*, a terminally-ill cancer patient sued for what she alleged was a misdiagnosis of her cancer which resulted in the removal or diminution of any substantial possibility of survival remaining to her. The government, while conceding that it was negligent, argued that plaintiff's allega-

tion of "loss of chance" failed to state a cause of action. The Fourth Circuit, however, found that it did:

> What was significant about *Hicks*, *Corso*, and *Hetrick*[2], was their affirmation that a certain kind of harm (the loss of a "substantial possibility of survival") could be actionable. A cause of action based on a loss of survival could now be brought and compensation awarded. Defendant argues that the district court has relied upon "dicta" in *Hicks* to adopt a lesser standard of proof of causation, based only on a "possibility." We believe defendant confuses causation and harm. After *Hicks*, the plaintiff's burden of proving causation by a preponderance of the evidence is not lessened, but the plaintiff may now recover damages for showing such causation of a new kind of *harm*: loss of a substantial possibility of survival. 799 F.2d at 918 (emphasis in original).

Thus, it is clear that the Fourth Circuit intended to recognize a separate and distinct cause of action commonly referred to as loss of chance. It is plaintiff's position that this doctrine has now been adopted in Virginia and that she is entitled to maintain such a cause of action here. The court does not agree.

To support her position, plaintiff cites the case of *Whitfield v. Whittaker Memorial Hospital*, 210 Va. 176, 169 S.E.2d 563 (1969). In *Whitfield*, plaintiff's decedent was undergoing a tonsillectomy and the removal of several teeth when a problem developed with the anesthesia. Specifically, the patient's stomach became "distended" or swollen from the gases, she went into shock, and she died. Plaintiff contended, *inter alia*, that the doctor was negligent in not immediately performing an operation to relieve the pressure in the patient's stomach after the problem arose, a procedure which an expert witness testified probably would have saved the patient's life. The trial court held

---

[2] Hicks v. United States, supra; Thomas v. Corso, 265 Md. 84, 288 A.2d 379 (1972); and Hetrick v. Weimer, 67 Md. App. 522, 508 A.2d 522 (1986).

that because the expert could testify only that an immediate operation "probably" would have saved the patient's life, plaintiff had failed to prove causation and granted the doctor's motion to strike. In reversing, the Supreme Court quoted the passage from *Hicks* set out above. The Court did not, however, indicate that it was recognizing a new cause of action.

This court believes that the holding in *Whitfield* was put into proper perspective in *Brown v. Koulizakis*, 229 Va. 524, 331 S.E.2d 440 (1985), also relied upon by plaintiff. In *Brown*, the patient died from a massive pulmonary embolus. His executor argued that the doctor was negligent by delaying diagnostic testing and treatment. In reversing the trial court's granting of a motion to strike, the Court first reiterated what it had said in *Whitfield*:

> In medical malpractice cases, as in other negligence actions, the plaintiff must establish not only that the defendant violated the applicable standard of care and was therefore negligent, he must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury or death. Thus, in a death case, if a defendant physician, by action or inaction, has destroyed any substantial possibility of the patient's survival, such conduct becomes a proximate cause of the patient's death. The law does not require the plaintiff to prove to a certainty that the patient would have lived had he received more prompt diagnosis and treatment for the condition causing the death. 229 Va. at 532.

The Court then discussed the particular evidence which it concluded was sufficient to overcome a motion to strike. In this court's view, that discussion makes it clear that Virginia has *not* adopted the Fourth Circuit's holding that loss of chance constitutes a separate cause of action. Instead, it is merely one way in which a plaintiff can show proximate cause:

Koulizakis did not initiate the routine, necessary diagnostic procedures which would have disclosed the ultimately fatal condition. This was evidence of negligence. Prompt diagnosis of the presence of the clot, which existed at least 48 hours before the death, would have enabled the orthopedist to administer treatment in the form of medication which would have substantially increased the patient's chances of living, according to the testimony. *This was evidence of proximate cause.*

Likewise, when Ball saw the patient on February 22 in the late afternoon, he had access to the same history, symptoms, and findings available to the orthopedist. Yet, Ball failed to order prompt testing, in a hospital having a 24-hour pulmonary function laboratory, and failed to initiate treatment for a clot, even though he included pulmonary embolism in his initial diagnosis. The evidence established the effectiveness of the accepted treatment if Heparin were administered for 12 hours. According to the testimony, 95 to 98 percent of patients in Mader's condition survive when so treated. But in this case, tests were delayed for over 24 hours, the proper diagnosis was never made. necessary treatment was never administered, and the patient died of the very condition that would have been discovered by more expeditious action. *This would support a conclusion that Ball's negligence was a proximate cause of Mader's death.* 229 Va. at 532-33 (emphasis added).

Accordingly, this court holds that Virginia has not recognized loss of chance as a separate cause of action. Instead, it is an evidentiary tool by which a plaintiff can have the issue of proximate cause determined by a jury. Just as the doctrine of *res ipsa loquitur*, in appropriate cases, allows the question of negligence to go to the jury even though plaintiff cannot prove what specific negligence was committed, the doctrine of loss of chance allows the question of proximate cause to be determined

by a jury even though plaintiff cannot rule out all other possible causes of the injury or death. Neither doctrine, however, is a separate cause of action. While I recognize that this holding is contrary to the holding of the Fourth Circuit in *Waffen, supra,* and possibly to Maryland law, I believe it to be a correct statement of Virginia law. Accordingly, defendant's demurrer to plaintiff's claim for loss of chance is sustained.[3]

## 2. *Agency*

Defendant also demurs to plaintiff's claim that defendant acted "directly and indirectly, vicariously, ostensibly, and apparently through its agent, servant, or employee, David L. Arkin, M.D. . . ." Defendant's demurrer is based on its contention that since Dr. Arkin was, and is, an actual agent of defendant, the court "should strike" the other agency allegations of the motion for judgment. Defendant also argues that plaintiff has failed to allege sufficient facts to support a finding of apparent or ostensible agency. The court rejects both contentions.

With regard to Dr. Arkin's being an actual agent, the court will be glad to accept a stipulation in that regard.[4] In the absence of such a stipulation, however, plaintiff has a perfect right to plead alternative facts and theories, including alternative facts and theories of agency. *See* Va. Code Section 8.01-281 and Rule 1:4(K) of the Rules of the Supreme Court of Virginia.

With regard to the sufficiency of plaintiff's factual allegations of apparent or ostensible agency, the court finds that such allegations are sufficient. Specifically, the allegations that Dr. Arkin was present when the Irbys

[3] This holding does not preclude plaintiff from proffering the instructions cited in her brief. Since those instructions can only be considered after the presentation of evidence, the court renders no opinion at this time on their propriety.

[4] The court resists the temptation to treat defendant's statement as an admission or stipulation that Dr. Arkin is an actual agent, although I feel that defendant would now be hard-pressed to deny such statement at trial.

arrived at defendant's offices, was sorting through mail at such offices, directed the Irbys to an examining room in those offices, and examined Melissa in those offices are more than sufficient to give defendant notice of the basis of plaintiff's claim of apparent or ostensible agency. *See* Rule 1:4(d) of the Rules of the Supreme Court of Virginia. Defendant's demurrer as to agency is overruled.

### 3. *Motion to Sever*

Finally, defendant asks the court to sever the parents' claims for the value of their nursing care or services rendered gratuitously for Melissa's benefit, their loss of wages and earning capacity, and their loss of Melissa's services from Melissa's claim for personal injury and the parents' claim for pecuniary expenses of treating Melissa. Va. Code Section 8.01-36 provides, in pertinent part:

> Where there is pending any action by an infant plaintiff against a tort feasor for a personal injury, any parent, or guardian of such infant, who is entitled to recover from the same tort feasor the expenses of curing or attempting to cure such infant from the result of such personal injury, may bring an action against such tort feasor for such expenses, in the same court where such infant's case is pending, either in the action filed in behalf of the infant or in a separate action. If the claim for expenses be by separate action, upon motion of any party to either case, made to the court at least one week before the trial, both cases *shall* be tried together at the same time as parts of the same transaction. Emphasis added.

To the extent that the parents' claims are for "expenses of curing or attempting to cure" Melissa from her injuries, then, the court has no discretion to order

separate trials over the objection of either party.[5] To the extent that the parents' claims are not for matters covered under Section 8.01-36, the court would appear to have discretion to order separate trials of such claims. *See* Va. Code Section 8.01-281(B). At this point, however, the court has been presented no facts to indicate that separate trials are preferable in this action. While defendant cites a workers' compensation case to argue that the parents' claims involve complex issues which would confuse the jury in considering Melissa's claim for personal injury and the parents' claim for pecuniary losses, that case is irrelevant to the issues involved here. Without some factual basis to show that all of the claims raised in the motion for judgment cannot be tried in an efficient and orderly fashion in one proceeding, the court has nothing on which to base the exercise of its discretion to sever. Accordingly, defendant's motion to sever is, at this stage of the proceedings, denied. Of course, the court makes no ruling on whether the non-pecuniary claims of the parents are cognizable. *See* n. 1 *supra*.

### 4. *Conclusion*

For the foregoing reasons, defendant's demurrer to plaintiff's claim of loss of chance as a separate cause of action is sustained; the demurrer to the apparent or ostensible agency claim is overruled; and the motion to sever is denied, without prejudice to renew such motion at a later time if pre-trial discovery or other events warrant.

---

[5] While the mandatory "shall" is used only with regard to the filing of separate actions, it would be anomalous to hold that a court could sever a portion of a single action but could not keep separate actions separate.