## CIRCUIT COURT OF CAROLINE COUNTY

Plantation Pipe Line Co.

v.

Tate,
B. K. Beavon,
and Lipscomb

November 1, 1988

Case No. CL87-000092

By JUDGE WILLIAM H. LEDBETTER, JR.

This litigation results from an incident that occurred on March 26, 1987, in which a bulldozer operated by the defendant Beavon and owned by the defendant Tate struck and ruptured an underground petroleum pipeline owned by Plantation Pipe Line. At the time, Tate and his employee, Beavon, were digging a pit under contract with the defendant, Lipscomb, on her property, for the purpose of burying debris. Although Tate and Lipscomb disagree as to which of them came up with the idea of burying (rather than hauling away) the debris, the fact remains that the excavation was done by Tate and his employee, Beavon. It is undisputed that the pit was dug within a granted easement, duly recorded, owned by Plantation Pipe Line.

In its motion for judgment, Plantation Pipe Line alleged negligence on the part of all three defendants and further alleged that the defendants violated their

respective duties under Virginia's Underground Utility Damage Prevention Act (Va. Code § 56-265.14 et seq.). In separate responsive pleadings, the defendants denied liability. In addition, Beavon filed a counterclaim against Plantation Pipe Line and a cross-claim against Lipscomb for personal injuries that he suffered as a result of the rupture.

The case was tried to a jury on September 21 and 23, 1988. On motion of Lipscomb, the court struck the evidence of Beavon on his cross-claim against her, and despite various motions to strike, submitted all other issues to the jury. Twenty-three instructions guided the jury's deliberations; twelve proposed instructions were refused for reasons stated to the record.

The jury returned a verdict in favor of Plantation Pipe Line against Tate and Lipscomb in the amount of $25,000.00; and, on Beavon's counterclaim, found in favor of Beavon against Plantation Pipe Line and assessed damages at $15,000.00.

After the jury had been pulled and discharged, the parties (except Beavon) made appropriate post-verdict motions. By agreement, the court delayed entry of a judgment on the verdicts pending submission of the motions in writing, with supporting memoranda. Therefore, no final order was sketched or entered. The purpose of this opinion is to address the post-verdict motions, and these rulings will be incorporated in a final order in this case.

*Plantation Pipe Line's Motion to Set*
*Aside the Verdict on Its Motion for Judgment*

Plantation Pipe Line, dissatisfied with the amount of its verdict against Tate and Lipscomb, moves the court to set aside that verdict and enter final judgment in its favor for $31,502.11. Plantation Pipe Line argues that the court has authority to grant the motion under Va. Code § 8.01-430 and that the motion should be granted because the evidence adduced at trial plainly establishes, without contradiction, that it sustained damages totalling $31,502.11.

In order for the court to set aside the jury verdict, it must find that the verdict is plainly wrong or without credible evidence to support it. In order for the court

to enter final judgment in an amount different from that contained in the jury's verdict, the court additionally must find that the issue of liability is clearly decided by the verdict and that there is evidence to support it and that reasonable people could not differ as to the specific, or "liquidated," amount of damages to be awarded.

Plantation Pipe Line's claim of damages is summarized in Plaintiff's Exhibit # 9, containing eleven separate items. (Each of these items was the subject of testimony by Plantation Pipe Line officials and employees, and documentation admitted as trial exhibits, over the objections of Tate and Lipscomb.) Some of the items represent expenses which company employees said were paid to third parties to repair and inspect the pipeline. Other items represent the costs of work performed by Plantation Pipe Line employees. A third category pertains to the "lost product," i.e., the aviation fuel which escaped from the pipeline as a result of the rupture and ensuing fire.

It is elementary that the party claiming damage has the burden of proving by the greater weight of the evidence each item of damage he claims and to prove that each item was proximately caused by the malfeasance of the defendant(s). The court instructed the jury accordingly. (Instruction # 18.) Every item of damage was the subject of objection by Tate and Lipscomb, which the court overruled for the reasons stated to the record. Preserving their objections, these defendants cross-examined the witnesses for Plantation Pipe Line extensively on these items of damage. Neither Tate nor Lipscomb conceded a single item; instead, they questioned them all and raised numerous points regarding their validity and the reasonableness or necessity of the amounts claimed. The jury was permitted to consider every item of damage claimed by Plantation Pipe Line, but the jury also heard much of that evidence called into question by cross-examination and in closing arguments.

The essence of Plantation Pipe Line's contention in support of its motion seems to be that a plaintiff is entitled to recover the exact amount of his claim if he produces evidence in support of his claim and the defendant produces no contradictory evidence. The position is untenable. As noted above, the burden is on the plaintiff to prove each item of his claim, not on the defendant

to disprove it; and the merits of a plaintiff's claim, or of particular items of damage claimed, may be brought into question by an attack upon the credibility of the plaintiff's evidence or by other methods short of a presentation of evidence that directly refutes the claim.

At no time during the trial did Plantation Pipe Line suggest that the jury should not be allowed to fix the amount of damages in the event that the jury returned a verdict in its favor. In fact, several instructions were given, without objection of Plantation Pipe Line, which informed the jury that it had the responsibility of determining the *amount* of damages if it found in favor of Plantation Pipe Line. (*See, e.g.,* Instruction # 1(9); Instruction # 6; Instruction # 18; Instruction # 19.).

In this case, the jury reasonably could have discarded the plaintiff's evidence with respect to some of the items and discounted other items. In that process, the jury could have concluded that Plantation Pipe Line had satisfactorily proven damages totalling only $25,000.00, rather than the full and exact amount shown at the bottom of Plaintiff's Exhibit # 9.

It is the opinion of the court that reasonable people may differ in their conclusions of fact to be drawn from the evidence, and in the weight to be given the testimony, regarding the amount of damage sustained. Accordingly, the plaintiff's motion to set aside the jury's verdict of $25,000.00 and to enter judgment in the amount of $31,502.11, is denied.

### Plantation Pipe Line's Motion to Set Aside the Verdict on Beavon's Counterclaim

As noted above, the jury awarded Beavon $15,000.00 on his counterclaim for injuries sustained in the accident. In order for Beavon to recover against Plantation Pipe Line, the jury had to have found that (1) Plantation Pipe Line was negligent, (2) Plantation Pipe Line's negligence proximately caused Beavon's injuries, and (3) Beavon was free of contributory negligence. See Instruction # 23. Plantation Pipe Line argues that the verdict is plainly wrong because there is no credible evidence to support it and that the court should have granted its motion to strike Beavon's evidence. The court agrees.

A more detailed review of the facts is necessary for an understanding of the court's rulings.

No one disputes that at the time of the accident, Plantation Pipe Line owned a thirty-foot-wide easement across the rear of Lipscomb's property; that the easement was recorded and marked by signs placed at intervals along the right-of-way facing the direction in which the pipeline ran; that Plantation Pipe Line owned and maintained a petroleum pipeline which ran underground approximately along the middle of the easement; that Beavon, employed by Tate, struck and ruptured the pipeline while they were in the process of performing work under contract with Lipscomb.

The parties have focused on two key factual disputes.

First, the testimony of Tate and Lipscomb differed as to which of them selected the site for the excavation. The genesis of this controversy was a conversation between tate and Lipscomb several days before the incident. Tate testified that while they were standing behind the dwelling house that was to be razed, Lipscomb pointed to an area to the rear of the dog pen and clotheslines, which, he said, is the precise spot at which he later directed Beavon to dig. Lipscomb, on the other hand, testified that she motioned toward an area much closer to the dwelling, in a rather general way, and that she intended to leave it to Tate to select the exact point of excavation. Based on his version of this on-site meeting, Tate took the position that Lipscomb is solely liable for the damages suffered as a result of the rupture because she directed him to dig in an area which she admittedly knew was traversed by an underground pipeline. Conversely, based on her version of the meeting, Lipscomb contended that Tate bears sole liability because he did not follow her directions, and, in any event, she was relying on his experience and expertise to select the precise spot for the burial pit.

Second, the parties disagreed regarding the visibility of the signs that marked the easement. Several witnesses testified that the pipeline was located in an open, cultivated field, and that the signs were clearly visible. One such witness was the tenant who farmed the field. He said that the field was planted in winter wheat which stood barely inches high on the day of the accident and that

the signs were clearly visible. Plantation Pipe Line submitted photographs taken the day after the accident that illustrated the location of the excavation, together with one of the signs in the background. (*See* Plaintiff's Exhibit # 8 and Plaintiff's Exhibit # 10.) Tate's witnesses said that the signs were obscured by undergrowth from his vantage point at the place of the dig. The defendants argue that the photographs were not fairly representative of the scene at the time of the accident because the field was burned over as a result of the rupture, thereby destroying the obstructing growth. Beavon testified that he did not see the signs marking the easement.

Before considering whether this evidence was sufficient to permit the jury to find in favor of Beavon against Plantation Pipe Line, it is necessary to address the appropriate standard of care applicable to this case. Plantation Pipe Line urged the court to instruct the jury that it owed no duty to Beavon other than to refrain from "wilful and wanton injury" to him. (*See* refused instruction C.) The defendants argued that Plantation Pipe Line, as a distributor of flammable fuels, owed a "high degree of care." (*See* refused instructions H and K.) (Actually, it is questionable whether Beavon is wedded to this position, since he did not object to Instruction # 2, which phrased his claim in terms of negligence; and he does not advocate the "high degree of care" standard in his post-trial memorandum.) The court rejected both propositions and held that the appropriate standard was that of ordinary negligence. The case went to the jury upon the theory of negligence. The court remains of the opinion that neither the traditional landowner-trespasser standard nor the imposition of a high standard of care is applicable to the circumstances of this case. Rather, for the purpose of this case, Plantation Pipe Line owed a duty of ordinary care. *See* Anno., "Liability of One Maintaining Pipeline, etc.," 30 A.L.R. 3d 685.

Generally, a pipeline owner is under a duty to exercise that degree of care which a prudent person would exercise under all the circumstances or care which is commensurate with the dangerous character of the pipeline and necessary to protect the public from foreseeable injury. The duty and standard of care that the owner of a buried pipeline owes to a person on the surface of its right-of-way varies

according to the status of the parties and the use of the property. Where the pipeline has been laid through land used for agricultural purposes, for example, it has been held that the pipeline owner is under a duty to bury its pipeline to a depth that will not interfere with cultivation. Where the pipeline owner invites or grants permission to use the surface of the right-of-way, it has a duty to mark or otherwise warn of the location of its pipeline, at least where the user is not already aware of its location and the pipeline owner has notice or knowledge of the presence of the person using the surface. Anno., 30 A.L.R. 3d 685 at § 2. One court has held that a person who makes an extraordinary use of the surface of a pipeline right-of-way is under a duty to inquire about the presence of a dangerous pipeline and to give the pipeline owner notice; then, once he has done that, the pipeline owner is under a duty to mark the location of the pipeline. *See Phillips Pipe Line Co. v. Razo*, 420 S.W.2d 691 (Tex. 1967). (This is the essence of statutory requirements of Virginia's Underground Utility Damage Prevention Act, § 56-265.14 et seq., enacted in 1979.) In those cases turning on the issue whether the pipeline owner was under a duty to mark or otherwise disclose the location of the pipeline for the person injured, the consensus seems to be that the existence of such duty depends upon whether, under all the facts, the pipeline owner should have anticipated that the proper use of the surface by others would be likely to bring the user into dangerous contact with the pipeline if he was not warned of its presence. *See* Anno., 30 A.L.R. 3d 685 at sect. 3[a].

Considering the facts of this case and the applicable standard of care, the jury verdict in favor of Beavon against Plantation Pipe Line is plainly wrong. The facts do not reasonably support a finding that Plantation Pipe Line, as an underline pipeline owner and operator, violated any duty of care to Beavon.

It is important to understand what this case is *not*. This is not a case involving a rupture, leak, or explosion occasioned by the pipeline owner's failure to maintain its line in a proper manner. This is not a case in which the pipeline's correct location was improperly marked. This is not a case in which the shallow depth of the pipeline

is the basis for a charge of negligence against the pipeline owner. This is not a case where the pipeline owner knew or had notice that the surface above the pipeline was being used in an extraordinary manner (i.e., excavation of a burial pit) or that Beavon or anyone else was digging or performing other work within its right-of-way.

Simply put, this case involves an excavation within an underground pipeline right-of-way of which the pipeline owner had no knowledge or notice, actual or constructive, in a rural area at a place where the pipeline traversed an open, cultivated field. Given the geographical location and the use to which the surface above the pipeline was ordinarily put, there is some authority (see above) for the proposition that the pipeline owner was not required to mark its right-of-way at all. Regardless, Plantation Pipe Line *did* mark the right-of-way with visible signs, placed at intervals along the path of the pipeline. Having assumed that duty, it may well be that Plantation Pipe Line had the further duty to keep such markers in a reasonably observable condition. Even so, the evidence in this case is clear, and the court is of the opinion that reasonable persons could not differ on the point, that Plantation Pipe Line had not allowed its signs to fall into disrepair or to become unreasonably obscured by vegetation growth. Plantation Pipe Line's evidence regarding the condition of its right-of-way, and its signs, on the day in question was compelling. In fact, Beavon concedes as much. Beavon, however, argues as follows:

> Barry Keith Beavon's evidence was that there were trees, bushes, weeds, and other sight-obscuring vegetation at or near the sign 75 feet from where Beavon was digging near the dog pen. His evidence was never proffered as to whether there were trees and bushes on the 30 foot easement. (Memo of Beavon, pp. 1-2).

Beavon's analysis of the evidence on this point is accurate. However, his concession is critical. Whether Beavon could see the markers from his vantage point, especially given the time of day he was working, may be factually significant in determining whether he was guilty of *contributory negligence*, but it has little

or nothing to do with the threshold issue of Plantation Pipe Line's alleged *primary negligence.* If the right-of-way itself was clear of trees, bushes, and other obstructions, and the signs were there, as everyone acknowledges, how can it be said that Plantation Pipe Line was negligent in maintaining its markings? To say that the pipeline owner must go further and remove all "sight obstructing" obstacles that *abut* its easement -- trees, shrubs, outbuildings, dog pens -- so that the signs marking the pipeline can be clearly visible from every imaginable angle, is absurd.

For the reasons explained, the court rules as a matter of law that Beavon failed to establish that Plantation Pipe Line was negligent in the maintenance of its pipeline markers or that it otherwise violated any duty to Beavon, a surface user whose presence, much less his activity, was unknown to Plantation Pipe Line. Obviously, the jury ignored the court's instructions in reaching its verdict, including the admonition against "sympathy verdicts" in Instruction # 4. Accordingly, Plantation Pipe Line's motion will be granted and judgment entered in favor of Plantation Pipe Line on Beavon's counterclaim.

### Tate's Motion to Set Aside Verdict against Him

In his post-verdict motion, Tate complains first of the court's action in admitting into evidence certain repair bills which Plantation Pipe Line claimed as items of damages. Despite *Walters v. Littleton,* 223 Va. 446 (1982), Tate contends that these bills were inadmissible as hearsay evidence.

Plantation Pipe Line officials were present at the scene immediately after the rupture and when the pipeline was repaired. At least one of these officials, familiar with the installation, maintenance, operation and repair of buried petroleum fuel pipelines, including the particular pipeline that was ruptured, testified from firsthand knowledge about the damage which the bulldozer did to the pipe and what was needed to repair it. The evidence established the nature and extent of the repair work and that the charges for the work were reasonable and necessary. These bills were submitted to the company and were paid.

Therefore, in this case the services performed and the relationship between the services and the charges were facts that were established by first-hand evidence, i.e., the testimony of persons who observed the work and who were familiar with what had to be done to repair the rupture. Under the circumstances, the evidence regarding the repair work, the charges for it, and the bills themselves, did not constitute hearsay. The jury could have properly considered these things in determining damages suffered by Plantation Pipe Line.

Next, Tate argues that the Virginia Underground Utility Damage Prevention Act is unconstitutional. The court disposed of this issue, raised by Tate, at trial.

In any event, this case was not tried on the theory that the defendants were liable because they violated that Act. The case was tried on the theory of negligence. Plantation Pipe Line urged the court to hold that Tate, Beavon and Lipscomb were responsible for damages caused by the rupture if they did not give notice of the excavation as provided in the Act. The court refused to construe the Act in such a fashion, which would have been tantamount to imposing something akin to strict liability on the defendants. Instead, the court gave only one instruction (Instruction # 17) which mentioned the Act, and in that instruction, the jury was required to find that the defendants should have given notice under the circumstances of this case *and* that their failure to do so proximately caused the rupture. Furthermore, when read together with the other instructions on the issue of liability, it is obvious that the jury was fully informed that Tate, as well as the other defendants, had a duty to exercise ordinary care under all the circumstances.

The evidence supports the jury finding of negligence on the part of Tate. Although he protested that he dug only where Lipscomb told him to dig, his testimony on that point defies common sense and is incredible, and, in any event, other credible evidence contradicted that testimony. Tate was an experienced excavator. He had been on the property prior to the day of the accident, and for quite some time on the day of the accident, with plenty of opportunity to survey the area before directing his employee to dig the burial pit. The pipeline traversed an open field at the point of rupture. Signs marked the

right-of-way, one sign being situated about seventy-five feet from the dig site. The jury was entitled to believe the parade of witnesses who testified that the field was not overgrown and that the signs were not obstructed, rather than Tate's rather weak assertions about weeds and brush obscuring his vision from his angle at the point of the dig. Whether Tate exercised ordinary care in the performance of the excavation work, and whether his negligence, if any, proximately caused the rupture and the damages, were questions for the jury.

Tate contends that the jury was "confused" because it found Plantation Pipe Line negligent as to Beavon but not contributorily negligent as to Tate. Tate and Beavon did not stand "on the same plane," as Tate contends. The evidence warranted the jury in finding that Tate was negligent in failing to survey the area before directing Beavon to dig the hole, in performing the excavation work in the dimness of dusk, and in failing to observe and heed the markers on the occasions that he was on the property preparing to perform his contract with Lipscomb. Thus, Tate's liability is not necessarily premised upon Beavon's negligence, as under a vicarious liability, or *respondent superior*, theory; rather, there is abundant evidence from which the jury could have found that Tate was himself negligent. See the discussion in *Roughton Pontiac Association v. Alston*, 236 Va. 152 (1988). Further, the court has ruled that Plantation Pipe Line, as a matter of law, did not reach or violate any duty of care that it owed Beavon as an unknown surface user of the right-of-way and has granted Plantation Pipe Line's motion to set aside the jury verdict in favor of Beavon (see above).

Tate alleges that the court should have instructed the jury that Plantation Pipe Line had the duty to exercise a "high degree of care." (*See* refused instruction H.) Tate's proposed instruction on that point was rejected because it misstates the standard of care owed by an underground pipeline owner to a surface user under the facts of this case. (*See* discussion above; Anno., 30 A.L.R. 3d 385.)

Tate alleges that the court erred in refusing to give refused instruction I. That instruction, too, was rejected because it is not a correct and complete statement of an underground pipeline company's duties under the facts of this case.

Finally, Tate complains that the court improperly admitted photographs of the scene. The photographs were taken the day after the accident. The witness through whom the photographs were offered testified that the photographs accurately portrayed the scene at the time of the accident. Tate, however, objected to their admissibility for the reason that the ensuing fire destroyed the "obstructing" weeds, etc., which he says existed at the time of the excavation, thereby giving the jury the wrong impression. In order to have sustained Tate's objection, the court would have had to ignore the sworn testimony of credible witnesses who contradicted him. Whether there were obstructions at all, and whether they were destroyed by the fire, were disputed factual questions. The court specifically cautioned the jury on this inconsistency in the testimony and warned the jurors to the effect that if they believed Tate's evidence that obstructions of the marker existed and that the obstructing weeds, shrubs, etc., were destroyed by the fire, such a factual determination would render the photographs meaningless in its deliberations on the issue of negligence. There was no error in the admission of the photographs as evidence.

The jury finding of Tate's liability is supported by the evidence, and the court committed no prejudicial error with respect to the evidence that the jury heard or with respect to the instructions that governed the jury's conclusion.

Accordingly, Tate's motion will be denied.

### *Lipscomb's Motion to Set Aside Verdict Against Her*

Without attempting to frame a universal principle covering all aspects of a landowner's duties vis-a-vis underground pipelines, it is clear at least that a landowner owes to the owner of a pipeline easement of which the landowner has knowledge a duty of ordinary care in the use of the surface within the right-of-way. This, in essence, is a duty to refrain from negligent conduct. The case against Lipscomb was presented to the jury on this basis. (*See* Instruction # 22.)

In order to evaluate Lipscomb's post-verdict motion, it is necessary to analyze the evidence, recited at length

above, as it relates to the plaintiff's claim of negligence against Lipscomb.

Lipscomb admits that she had actual knowledge of the existence and location of the right-of-way. She was familiar with the signs that marked the right-of-way as it traversed her property. Therefore, her defense was quite different from that of Tate, who asserted that he did not know of the right-of-way and, in the exercise of ordinary care, could not have known of the right-of-way because of the plaintiff's failure to keep the markers free of trees, shrubs, and other obstructions. Instead, conceding that she was aware of the location of the pipeline easement, Lipscomb took the position at trial that she engaged in no negligent conduct with respect to the surface use of the right-of-way. Upon reflection, the court agrees with Lipscomb.

Four instructions, in addition to the general "finding" instruction, were given to the jury bearing on the issue of Lipscomb's liability. (*See* Instructions # 13, # 14, # 15 and # 16.)

The jury was permitted to evaluate the question of Lipscomb's liability from two perspectives.

First, aside from any negligence imputed to her as a result of Tate's conduct, the jury was permitted to predicate liability upon evidence showing Lipscomb's own tortious acts or omissions. Upon reflection, the court finds that the evidence fails to show any act of negligence on the part of Lipscomb which proximately caused the damage sustained by Plantation Pipe Line. She was not present at the scene at any time during the excavation, and she had nothing to do with the actual excavation. There is no credible evidence from which the jury could infer that Lipscomb directed Tate to go a considerable distance from the house, into a cultivate field, and dig a pit specifically in a known right-of-way area, or that she retained any other type of control over the situs or that she reserved the right to exercise control over the work or the method of the excavation.

The plaintiff contended at trial that Lipscomb's failure to give notice under the Virginia Underground Utility Damage Prevention Act provided a basis for her liability. It would be absurd to hold that the Act imposes upon a landowner a duty of notification even when the

landowner did not direct or authorize an excavation within a utility right-of-way and did not know that an excavator was going to dig there. There is no credible evidence to support a finding that Lipscomb directed or authorized Tate to dig within the right-of-way, or that she knew that Tate would dig the burial pit there.

Second, the jury was told that although an independent contractor's negligence ordinarily is not imputed to the person who hired him, the doctrine of vicarious liability may be applicable under circumstances involving inherently dangerous or extra-hazardous activity. *See* 9B M.J., *Independent Contractors* § 12 and § 16. Under the circumstances of this case, however, the negligence of Tate cannot be imputed to Lipscomb. Digging is not an *inherently* dangerous activity, at least when it is done by an experienced excavator in a rural area. *See* illustrative cases in 41 Am. Jur. 2d, *Independent Contractors* § 43. As noted above, the court finds no credible evidence that Lipscomb knew that Tate was going to excavate on top of the pipeline; and, clearly, she was not present when the excavation took place. Under these circumstances, liability of Lipscomb cannot be based upon the proposition that she hired Tate to engage in inherently dangerous activity.

Because the jury verdict against Lipscomb is contrary to the law and the evidence, and is plainly wrong, Lipscomb's motion will be granted.

### Conclusion

Final judgment will be entered in favor of Plantation Pipe Line against Tate in the sum of $25,000.00.

The verdict in favor of Plantation Pipe Line against Lipscomb will be set aside and final judgment entered in favor of Lipscomb.

The verdict in favor of Beavon against Plantation Pipe Line will be set aside and final judgment entered in favor of Plantation Pipe Line on Beavon's counterclaim.

Judgment will be entered in favor of Lipscomb on Beavon's cross-bill against her.

Plantation Pipe Line's post-verdict motion will be denied. Judgment will be entered in favor of Beavon, according to the jury verdict, on Plantation Pipe Line's motion for judgment.